HELEN M. GASSETT *vs.* TIMOTHY GILBERT & others.

The publication, by the directors of an incorporated society for promoting female medical education, in their annual report, of a " caution to the public " against trusting a person who had formerly been employed to obtain and collect subscriptions in their behalf, but has since been dismissed, is justified so far only as it is made in good faith, and required to protect the corporation and the public against false representations of that person; and the questions, whether the directors have acted in good faith, and have not exceeded their privilege, are for the jury.

ACTION OF TORT by a former agent of the Female Medical Education Society against the directors of that society for an alleged libel published in 1852, at the end of their third annual report, as follows :

" CAUTION TO THE PUBLIC.

" The directors regret to be again obliged to caution the public against a Mrs. Helen Maria Gassett, alias Helen Maria Rice, who, under the former name, was recommended to the society, and was for a time employed as an agent, but was found unworthy of confidence, and dismissed. Still continuing to collect, she was, in May last, advertised, but has since been heard of in various places, obtaining money by representing herself as having been unjustly treated by the society, and by other pretences. By obtaining contributions from many respectable persons, and using their names in her subscription book, she has, it is believed, been very successful in imposing upon people. She is a woman of middle age, medium stature, light complexion, a fluent talker, and well calculated to deceive. Persons who have been or may

be applied to by her will do the public a service by reporting her to some one of the directors of the society."

At the trial, it appeared that said society was incorporated by *St.* 1850, *c.* 259, "for the purpose of providing for the education of midwives, nurses and female physicians;" that the plaintiff had been employed by them as an agent to obtain and collect subscriptions from the public; and that her authority had been revoked by them in December 1850.

Evidence was introduced by the plaintiff, tending to show that the defendant Gilbert, in 1851, caused to be published in two newspapers of Boston a caution to all persons against paying money to the plaintiff, as she had been dismissed several months previously, and had no authority to collect for the society; and that Samuel Gregory, another defendant, in September 1852, caused to be published in another newspaper of Boston a notice substantially like the alleged libel, entitled: "A Female Impostor;" that there was a dispute between the plaintiff and the society, concerning the settlement of her accounts and that Gregory, on being applied to by relatives of the plaintiff, refused to make any explanations, or to state the facts upon which the society based their belief that the plaintiff had continued to make collections of money in the name of the society after her agency had ceased.

The defendants objected that this action could not be maintained, because it was apparent, on this evidence, that the publication complained of was, under the circumstances, a privileged communication. *Merrick,* J. sustained the objection; and reported the case for the whole court, with the agreement, that if the ruling was correct, the plaintiff should become nonsuit; otherwise, the case should stand for trial.

*B. F. Hallett,* for the plaintiff.

*R. Choate & S. E. Sewall,* for the defendants. When a party charged with a libel made the publication complained of in the discharge of any duty which he was required to perform, either to protect his own personal interests, the interests of others, or those of society at large, the legal presumption of malice is rebutted, and in order to sustain the action the plaintiff must

prove express malice. 1 Stark. Sland. 292. 50 London Law Mag. 115, 142. *Somerville* v. *Hawkins,* 10 C. B. 583. *Toogood* v. *Spyring,* 4 Tyrwh. 582, 595. *Bradley* v. *Heath,* 12 Pick. 164. *Wheeler* v. *Nicholls,* 3 How. 266, 291. *Fairman* v. *Ives,* 5 B. & Ald. 642. *State* v. *Burnham,* 9 N. H. 34. *O'Donaghue* v. *M'Govern,* 21 Wend. 26. *Remington* v. *Congdon,* 2 Pick. 310. *Swan* v. *Tappan,* 5 Cush. 110. *Padmore* v. *Lawrence,* 11 Ad. & El. 382. *Bromage* v. *Prosser,* 4 B. & C. 247. *Blackham* v. *Pugh,* 2 C. B. 611. *Todd* v. *Hawkins,* 8 Car. & P. 88, and 2 M. & Rob. 20. *Coxhead* v. *Richards,* 2 C. B. 569. *Jackson* v. *Stetson,* 15 Mass. 50. *Adcock* v. *Marsh,* 8 Ired. 360.

This case comes within these principles. The defendants had a duty to perform—to make an annual report. In making that report, they felt it necessary to caution the public, the patrons of the society, against the plaintiff, their former agent, whose conduct they thought was injuring the society. The defendants were therefore justified in addressing the caution to the public, they being the persons sought to be reached. *Delany* v. *Jones,* 4 Esp. R. 191.

The words of the publication do not imply malice. In the case of a privileged publication, whether the words used imply malice is a question for the court; and where evidence is introduced to prove express malice, the court will not submit it to a jury, unless of opinion that the circumstances raise a probability, not a mere possibility, of malice, and that the jury would be warranted in inferring express malice. *Somerville* v. *Hawkins,* 10 C. B. 583. *Toogood* v. *Spyring,* 4 Tyrwh. 597. *Johnson* v. *Evans,* 3 Esp. R. 32. *Pater* v. *Baker,* 3 C. B. 831. *Taylor* v *Hawkins,* 16 Ad. & El. N. R. 308. *Smith* v. *Spooner,* 3 Taunt. 246. *Tuson* v. *Evans,* 12 Ad. & El. 733. The facts proved by the plaintiff do not indicate malice at all. Even where the facts eave the intent doubtful, good faith is to be presumed.

The decision was made at March term 1857.

BIGELOW, J. There can be no doubt that the publication of the notice or " caution to the public," set out in the declaration, had a direct tendency to hold the plaintiff up to public reproach

and disgrace; and was therefore actionable, unless it falls within the class of communications or statements usually termed privileged, that is, authorized by law, notwithstanding they may injuriously affect private character. The law regards the publication of all defamatory matter, which is false in fact, as malicious, and affords to the party injured a remedy in damages therefor. This is the general rule. But there are cases which constitute an exception to it. These are, when the cause or occasion of the publication is such as to render it proper and necessary for common convenience and the general welfare of society that the party making it should be protected from liability. In such cases, the occasion rebuts the inference of malice, which the law would otherwise draw from an unauthorized publication, and renders it necessary for the party injured to show actual malice, or, as it is sometimes called, malice in fact, as an essential element in support of his action.

The precise limits within which the publication of defamatory matter is allowed, as being privileged by the occasion, are best defined by Baron Parke, in the leading case of *Toogood* v. *Spy-ring*, 1 Cr. M. & R. 193, and 4 Tyrwh. 595. It is there laid down, that a publication "fairly made by a person in the discharge of some public or private duty, whether legal or moral, or in the conduct of his own affairs in matters where his interest is concerned," comes within the class of privileged or authorized communications. A party cannot be held responsible for a statement or publication tending to disparage private character, if it is called for by the ordinary exigencies of social duty, or is necessary and proper to enable him to protect his own interest or that of another, provided it is made in good faith, and without a wilful design to defame. This general statement of the doctrine on this point seems to be consonant with sound principle, and is supported by numerous authorities. Bul. N. P. 8. *Hargrave* v. *Le Breton*, 4 Bur. 2425. *Bromage* v. *Prosser*, 4 B. & C. 247. *Pattison* v. *Jones*, 8 B. & C. 578. *Child* v. *Affleck*, 9 B. & C. 403. *Somerville* v. *Hawkins*, 10 C. B. 583. 1 Stark. Sland. 292.

The question, whether in a particular case a publication is to

be deemed privileged, that is, whether the situation of the party making it and the circumstances attending it were such as to rebut the legal inference of malice, is a question of law, to be determined by the court in the first instance. *Coxhead* v. *Richards*, 2 C. B. 569. *Taylor* v. *Hawkins*, 16 Ad. & El. N. R. 308. But, in deciding this question, the conditions on which it is to be held to be privileged must necessarily be assumed; that is, it must be taken for granted that the publication was believed by the party who made it to be true, and that it was made *bona fide;* because, if these elements are found to be wanting, then a jury would be authorized to infer malice. The sole duty of the court therefore, in such cases, is to determine whether the occasion, in the absence of actual malice, would justify the publication. If so, then it is incumbent on the plaintiff to prove the existence of malice, in order to sustain his action; and this must be shown to the satisfaction of the jury, whose exclusive province it is to pass upon the question. But it is not necessary to prove it by extrinsic evidence. It may be inferred from the relation of the parties, the circumstances attending the publication, and even from the terms of the publication itself. *Wright* v. *Woodgate*, 2 Cr. M. & R. 573, and Tyrwh. & Gr. 12.

By the application of these well settled principles, the questions raised in the present case can be satisfactorily determined. It appears that the defendants were the directors of a corporation called the Female Medical Education Society, established for the purpose of educating females in the science of medicine; that, for the purpose of raising funds in aid of the objects contemplated by their act of incorporation, they had resorted to the method of obtaining subscriptions from the public at large in various towns of this commonwealth, and that they had originally employed the plaintiff as an agent to obtain and collect such subscriptions. It further appears that the plaintiff ceased to be the agent of the corporation in December 1850, and her authority to receive subscriptions and collect money in their behalf was then revoked.

There can be no doubt that it was the duty of the defendants, as directors of the corporation, to look after its prudential and

financial concerns, and to take all proper measures to see that the money raised by subscription, in aid of the institution under their charge, was collected and appropriated according to the intention of those from whom it was obtained. If they believed that the plaintiff, after her authority as such agent had ceased, was falsely representing herself as still authorized to collect subscriptions in behalf of the corporation, and was thereby wrongfully obtaining money from the public, they were justified in publishing a notice, couched in such language as was necessary and proper to put persons on their guard against her unauthorized representations, and to prevent her from receiving money under the false pretence that it was collected for the use and benefit of the corporation. Their private interest and their duty to the public alike required that such notice should be given, if they believed the facts stated in it to be true, and acted honestly and in good faith in making the publication. To this extent, we think that the occasion justified the defendants.

But it does not follow that there was no evidence in the case upon which it was proper for the jury to pass, as showing the existence of actual malice on the part of the defendants. They cannot be justified if they have included in their notice any statements or language of a defamatory nature, not warranted by the occasion which called forth the publication. The privilege must be limited by the exigency; and if the defendants, by the terms of the notice published by them, exceeded the just limits which were necessary and proper to accomplish the legitimate purpose of protecting the corporation and the public from the unauthorized acts of the plaintiff, it will be evidence of malice, proper to be weighed by the jury. So too the question of good faith on the part of the defendants, and their honest belief in the truth of the statements put forth by them, are matters of fact which are to be .determined exclusively by the jury. Although it is not necessary for the defendants to prove the truth of the statements contained in the notice, in order to justify the publication, yet proof of their falsity is admissible on the part of the plaintiff to show that the defendants did not act on an honest belief in their truth. We are therefore of opin·

ion that the case must be submitted to the jury to determine the questions, whether, under all the circumstances adduced in evidence, the defendants have not exceeded the just bounds of their privilege, and been actuated, not by an honest purpose to protect the interests of the corporation and guard the public against imposition, but by a malicious design to defame the plaintiff's character.          *Case to stand for trial.*

A trial was had at March term 1858, and resulted in a verdict for the defendants, upon which judgment was rendered.