(Decided 17th February, 1871.)

---

## GEORGE SNYDER vs. CHARLES C. FULTON and ALBERT K. FULTON.

*Libel—Words actionable per se—Liability of Editors of newspapers—Measure of damages.*

In a publication in a newspaper, it was asserted that S, a newsboy, "takes every occasion to insult Republican passengers," that he "appears to have been in collusion with ruffians," and that "on approaching the city he went around (in the cars) to take a vote of the passengers, the object being evidently to spot the Republicans, that the assailants might know who were their friends and who their opponents." On suit for libel, it was HELD:

1st. That these words published were in themselves libellous, and entitled the person charged to maintain an action.

2d. That this publication did not come within any of the classes designated by the law as privileged publications or communications.

In a libel suit the plaintiff is entitled to recover such damage as the jury may find he has sustained as the direct consequence of the publication. If the publication proceed from express malice or ill-will, the jury may award such exemplary or punitive damages as they may think the facts of the case justify.

APPEAL from the Superior Court of Baltimore City.

The facts are sufficiently given in the opinion of the Court. At the trial below the plaintiff offered the following prayers, which were rejected, and the instructions set out in the opinion of the Court given instead :

1. If the jury believe from the evidence that there was an unlawful and felonious assault committed, as set out in the declaration of the plaintiff, that the defendants made and published in the city of Baltimore, on the 14th of October, 1868, the article set out in the said declaration ; and that the plaintiff was designated by that article, as acting in collusion with and in aid of the parties committing said assault, that then, under the pleadings in the cause, they must find a verdict for the plaintiff.

2. That by the pleadings in this case, the defendants admit that the plaintiff is not guilty of the charge alleged in the libel and set out in the declaration, and that all the evidence given by the defendants in regard to the conduct of the plaintiff in taking the vote, and his behavior towards members of the Republican party, is evidence not to defeat the plaintiff's right to recover a verdict as set out in the first prayer, but was received, and is only to be considered by them as offered by the defendants for the purpose of endeavoring to mitigate and diminish the amount of the damages that the plaintiff is entitled to recover, if the jury find a verdict in his favor under said first instruction.

3. That if under the preceding instruction the jury should find a verdict for the plaintiff, then he is entitled to recover such damages as the jury may find he sustained from the loss of his position as newsboy on the Baltimore and Ohio Railroad ; provided the jury shall find that he lost his position as a direct consequence of said publication ; and in addition to the special damages, such other damages as the jury may award him as resulting to him directly from said publication ; and if the jury should further find that the said publication proceeded from ill-will to the plaintiff, that

9　　　　　　　v. 34

Snyder *vs.* Fulton.

then the jury may award to the plaintiff vindictive or puni-
tory damages.

4. That if the jury find that the plaintiff, at and previous
to the publication of the libel, as set out in the declaration,
was a newsboy engaged in crying and selling newspapers and
periodicals on the cars between Baltimore and Washington;
and that amongst the papers so cried and sold by him, was a
paper called the La Crosse Democrat; and that the crying
and sale of said paper was considered offensive and insulting
by certain parties; and that it was in allusion to such crying
and sale, that the defendants charged that in the said libel
the plaintiff took every occasion to insult Republican pas-
sengers; and that, after the publication of the card of plain-
tiff, read in evidence, if the jury should find that said card
was published, and that defendants had notice thereof, the
said defendants failed to retract the said libellous publica-
tion; and that on the 1st of October instant, the plaintiff
re-published the substance of the said libel without any
explanation and retraction whatsoever; that then these facts
are to be considered by the jury, in determining whether the
defendants were actuated by ill-will towards the plaintiff, in
publishing the libel aforesaid; and if the jury find such ill-
will, then the plaintiff is entitled to recover vindictive dam-
ages, if the jury find the facts set out in the first instruction.

5. If the jury find from the evidence in this case, that the
libel complained of in the declaration was false and without
probable cause, so far as relates to the plaintiff, then such
falsehood and want of probable cause, are evidence of express
malice towards the plaintiff.

The cause was agued before BARTOL, C. J., BRENT,
GRASON, ALVEY and ROBINSON, J.

*M. A. Mullin* and *Robert J. Brent*, for the appellant.

The publication of a libel charging another with an indict-
able offence, is of itself actionable. 1 *Starkie on Slander*,
39, 40.

Independently of the charge of a crime at common law, the alleged collusion with the mob engaged in the felonious assault of travellers at night, would render the plaintiff liable to fine and imprisonment under the local law. *Code of Public Local Laws, Art.* 4, sec. 155.

An action lies for written words exposing a man to public hatred, ridicule or contempt, even without proof of special damage. 1 *Kent's Comm.*, 620, 621.

The Court, in its instructions to the jury, erred in the question of privileged communications, and particularly in ascribing to the defendants, *as publishers of a public newspaper*, peculiar privileges in discussing, not only public events, but the actions and motives of individuals charged with crimes.

The instruction means that the defendants, as editors of a newspaper, are privileged to libel *an individual* because evil-doers have committed crimes and are not punished, *provided* their comment on *the facts as reported to them* was fairly and *bona fide* made "*pro bono publico,*" although it implicates an innocent party, or *is based on false* information.

It is true, the Judge speaks of the right and duty of editors to *publish the facts which come to their knowledge constituting the crime*, and if the charge only meant to say that if the defendants had published the real facts which came to their knowledge, then they would not be liable, it would still be erroneous, as justification had not been pleaded. *Rigdon vs. Wolcott*, 6 *G. & J.*, 413; *Hagan vs. Henry*, 18 *Md.*, 191; 2 *Greenleaf's Evid.*, sec. 275; *Wolcott vs. Hall*, 6 *Mass.*, 514.

Even when an editor has the privilege of making fair criticism, it is held "that the privilege does not extend to calumnious remarks on the private character of the individual. *Heriot vs. Stuart*, 1 *Esp. Cases*, 437 ; *Townsend on Slander, note*, 1312.

The newspaper press has no more privileges in an assault on private character, than an individual would have. The measure of liability is the same in one case as another, as shown in *Townsend on Slander*, secs. 252, 254, 255; *Camp-*

*bell vs. Spottiswoode*, 8 *Law Times Rep.*, *N. S.*, 201, 3 *Fost. & Fin.*, 421; *Sheckell vs. Jackson*, 10 *Cush.*, 25; *Dole vs. Lyon*, 10 *Johnson*, 450; *Woodgate vs. Ridout*, 4 *Fost. & Fin.*, 217; *Darby vs. Ouseley*, 36 *Eng. Law and Eq.*, 527; *Hedley vs. Barlow*, 4 *Fost. & Fin.*, 228.

On the question of damages the instruction of the Court was an emanation of the error pervading its instruction on the question of privilege. *Townsend on Slander*, secs. 198, 290.

*Henry Stockbridge*, for the appellees.

The law does not require publishers to be infallible. If they act in good faith, and with reasonable prudence, the publication is privileged, even though prompted by malice. *White vs. Nicholls*, 3 *How.*, 286, 291; *Cook vs. Hill*, 3 *Sandf.*, 341; *Gathercole vs. Miall*, 15 *M. & W.*, 319; *Kelley vs. Tinling*, *Law Reports*, 1 *Queen's Bench*, 699; *Wason vs. Walter*, *Law Reports*, 4 *Queen's Bench*, 73; *Risk Allah Bey vs. Whitehurst*, 18 *Law Reporter*, *N. S.*, 615.

BARTOL, C. J., delivered the opinion of the Court.

This is an appeal by the plaintiff, who recovered a judgment below; and being dissatisfied therewith, asks for a reversal for certain alleged errors in the ruling of the Superior Court, in refusing to grant his several prayers, and in the instruction given to the jury.

The suit is for the publication of an alleged libel, in "The Baltimore American," a newspaper of which the defendants are editors, proprietors and publishers. The plaintiff's occupation was selling newspapers and periodicals on the railway trains between Washington and Baltimore. The alleged libel was contained in an article published in "The American," the whole article was given in evidence. After stating that passengers passing through Baltimore from Washington, on their way to Philadelphia, had been, on several occasions, assaulted and beaten by ruffians, and that the repetition of

such outrages reflected discredit on the Police Department as well as on the Railroad Companies; it then refers to a particular instance in which such an outrage had been committed on a Mr. Clary, a passenger, at the President Street Depot, in Baltimore, and commenting thereon, states that "the object of this brutal outrage was to prevent Republican clerks, and others temporarily employed in Washington, from going to Philadelphia to vote;" then adds the following, which constitutes the libellous matter complained of by the plaintiff, and set out in the declaration:

"A young man on the Washington train, who is engaged in selling papers, and who takes every occasion to insult Republican passengers, appears to have been in collusion with the ruffians. On approaching the city he went around to take a vote of the passengers, the object being evidently to spot the Republicans, that the assailants might know who were their friends and who their opponents. The scheme was successful, and on passing through the city, an ex-police officer of Washington pointed out the victims, who had unwittingly proclaimed their political predilections in favor of Grant and Colfax." The declaration alleges as special damage, that he lost his situation as newsboy in consequence of the publication, and also claims for general damages. The defendants plead "that they did not commit the wrong alleged," upon which issue was joined.

After the evidence on both sides had been concluded, the Court below rejected the five prayers offered by the plaintiff, and instructed the jury as follows:

"To entitle the plaintiff to recover in this action, the jury must find that the writing, set out in the declaration, was published by the defendants, of and concerning the plaintiff. But if they shall also find that at or just previous to the time of the said publication, the peace of the city was repeatedly disturbed, and the rights of private persons traveling on their own lawful business between Washington and Philadelphia, violently and unlawfully invaded and violated

Snyder *vs.* Fulton.

by evil doers, who were not arrested nor punished, as detailed in the evidence, then it was the right and duty of the defendants, as publishers of a public newspaper, to publish the facts which came to their knowledge, constituting the said crime, and to comment thereon with such severity of rebuke as a flagrant breach of the peace deserves; and such statement and comment, if fairly and *bona fide* made with a view to the public good, was a privileged communication, free from the legal presumption of malice which attends a libellous publication not privileged; and the plaintiff is not entitled to recover. But, in order to entitle the defendants to a verdict upon the ground of privilege, the jury must find that they were actuated by proper motives, exercising reasonable prudence in the ascertainment of the facts, and had reasonable grounds to believe the statement made by them was true, and that they made the same without malicious motives."

"If, under these instructions, the jury shall find a verdict for the plaintiff, then they are at liberty to give compensatory damages for such injury as the plaintiff may have proved himself to have sustained; and if they find express malice on the part of the defendant, or the absence of good faith or reasonable prudence, then they may give such exemplary damages as they may think such a state of case justifies."

We think there was error in these instructions, both in respect to the nature and extent of privilege ascribed to the defendants, and in the rule of damages laid down for the jury. There can be no doubt or question that the defamatory words set out in the declaration are, in themselves, libellous, and if published of and concerning the plaintiff, entitle him to maintain the action, unless the defendants are protected from liability by reason of some privilege accorded to them by the law. To make defamatory words actionable *per se*, when they are written or published, it is not necessary that they should charge a party with a crime or offence which would subject him to indictment or ignominious punishment. There is a broad and just distinction, in this respect, between

spoken words and words written or published.   Chancellor
KENT says, 1 *Comm.*, 620 : " Expressions, which tend to
render a man ridiculous, or degrade him in the esteem and
opinion of the world, would be libellous if printed, though
they would not be actionable if spoken.   So, if they tend to
injure his reputation and expose him to public hatred, con-
tempt or ridicule."

This proposition was laid down by Justice BAYLEY, in
*McGregor vs. Thwaites*, 3 *Barn. & Cres.*, 33.   It has been
affirmed, in many other cases, some of which are cited in the
notes in *Kent's Commentaries*, above referred to, and was
recognized and affirmed by the Supreme Court in *White vs.
Nicholls*, 3 *How.*, 266.

As was said by Justice DANIEL, in the case last cited :
" The principle of the law always implying injury, wherever
the object or effect is the exposure of the accused to criminal
punishment or to degradation in society."

The defamatory words here charged being *per se* actiona-
ble; the question arises, whether the publication comes within
the class designated as privileged, so as to entitle the defend-
ants to exemption from liability for the consequences, even
though the charge prove to be untrue; provided they made
it in good faith, believing it to be true, and had reasonable
grounds for that belief, after exercising reasonable prudence
in the ascertainment of the facts.   This seems to have been
the view of the law taken by the Court below, and embodied
in the instruction given to the jury.   The privilege accorded
to the defendants is supposed to grow out of the fact that they
were publishers of a public newspaper, and as such, had cer-
tain duties to perform towards the public which entitle them
to be protected from liability to the plaintiff.   In our judg-
ment, the Court below has extended the doctrine of privilege
farther than is warranted by authority, or consistent with
sound reason and public policy.   It seems to us that the pub-
lication before us, in so far as it contained charges against the
plaintiff, does not come within any of the classes designated

by the law as privileged communications or publications. These have been very well defined by the Supreme Court in *White vs. Nicholls,* 3 *How.,* 286, 287; it is unnecessary to repeat them here; and is sufficient to say that, in our judgment, they do not apply to the present case, or entitle the defendants to the protection claimed on the ground of privilege. We do not propose here to define the exact limits of the protection which the law throws over the publishers of newspapers. In respect to them, it is said by TOWNSEND, in his work on *Slander and Libel,* "it is argued that the exigencies of the business of a newspaper editor, demand a larger amount of freedom. That circumstances do not permit editors the opportunity to verify the truth, prior to publication, of all they feel called upon to publish, and that they should not be responsible for the truth of what they publish. Some concessions have already been made to these arguments. At present, the law takes no judicial cognizance of newspapers, and independently of certain statutory provisions, the law recognizes no distinction in principle between the publication by the proprietor of a newspaper and a publication by any other individual," and for this the author cites, *Davison vs. Duncan,* 36 *Eng. L. & Eq. R.,* 218; *Campbell vs. Spottiswoode,* 8 *Law Times Rep., N. S.,* 201, *S. C.,* 3 *Fos. & Fin.,* 421; we may add to these *Behrens vs. Allen,* before ERLE, C. J., at *nisi prius,* 3 *Fos. & Fin.,* 136.

In *Sheckells vs. Johnson,* 10 *Cush.,* 25, it was held by the Supreme Court of Massachusetts, "that a newspaper proprietor is not privileged as such in the dissemination of news, but is liable for what he publishes in the same manner as any other individual."

We have examined the cases of *Kelly vs. Tinling, Law Rep.,* 1 *Queen's Bench,* 699; *Wason vs. Walter,* 4 *id.,* 73, and *Risk Allah Bey vs. Whitehurst,* 18 *Law Rep., N. S.,* 615, cited and relied on by the appellees' counsel in the argument in support of the privilege claimed for the defendants in this case. But, in our opinion, they do not support the position for

which they have been cited. In. *Kelly vs. Tinling,* it was held that there was a lawful privilege in a church warden to discuss publicly the use to which an incumbent had put the vestry room. In *Wason vs. Walter,* a like privilege was ascribed to the proprietor of a newspaper, to make a faithful report of a debate in the House of Lords; and it was held, that although it might contain matter disparaging to the character of an individual, it was not actionable. But the publication is privileged on the same principle as an accurate report of proceedings in a Court of Justice is privileged, viz : that the advantage to the community at large outweighs any private injury resulting from the publication. The case of *Risk Allah Bey vs. Whitehurst,* was decided on the same principle. That related to a publication of the proceedings of a Court of Justice.

The opinions in these cases were rendered by the very able Chief Justice COCKBURN, and commend themselves to our admiration and approval, not less for the soundness of the legal propositions therein asserted, than for the clear and forcible manner in which they are expressed. The proposition which they maintain is, that any man, editor or private citizen, has a right honestly to discuss all matters of public interest, and to comment on and criticise fairly the public acts of official persons. Such a proposition we do not for a moment question. So far as the publication before us was confined to the statement of the riotous and violent assaults upon passengers, and reflected upon the delinquency of the police authorities and other officials, if made in good faith and upon reasonable grounds of information, the case comes within well-recognized principles, and the publication is, to that extent, privileged. But such privilege does not extend to the right of charging the plaintiff, a private citizen, with having been in collusion with the ruffians and wrong-doers, and aiding them in selecting the victims of their intended violence, by "spotting the Republicans" for that purpose.

Snyder *vs.* Fulton.

Such a charge is not within the editor's privilege; he makes it upon his responsibility as any other citizen, and is bound to establish its truth by his pleading and proof, or to answer to the party for the damage and injury he may suffer in consequence of the charge.

The rule of damage in such action is, that the plaintiff, if the verdict is found in his favor, is entitled to recover compensation for such damage as the jury may find he sustained as the direct consequence of the publication; and if the jury should find from the evidence that the publication proceeded from express malice or ill-will to the plaintiff, then the jury may award to him such exemplary or punitive damages as they may think the facts of the case justify.

The instruction of the Court below, we think, did not state the rule with clearness and precision, and was calculated to mislead the jury. It follows, from what has been said, that in our opinion the *first, second, third* and *fifth* prayers of the plaintiff below ought to have been granted, and it was error to reject them. The fourth prayer, we think, was properly refused, for the reason that the subsequent publication by the defendants offered in evidence, and referred to in the prayer, did not, according to a fair construction of its terms, contain a repetition of the libel complained of; and it would have been error to instruct the jury that it was evidence of actual malice on the part of the defendants.

The judgment must be reversed and a new trial ordered.

*Judgment reversed,*
*and new trial ordered.*

(Decided 21st February, 1871.)