HENRY W. VALLERY v. STATE OF NEBRASKA.

FILED OCTOBER 2, 1894.   No. 5371.

1. **Libel**: DEFENSE.   In a prosecution for libel it is no defense that the writing was a repetition of previous oral publications and that the defendant was induced to make the written publication by acts of the person concerning whom the libel was published.

2. ———: PRIVILEGED PUBLICATION: MALICE. The libel alleged
was published of and concerning a school teacher at a meeting of
the school district called for the purpose of receiving any charges
which might be made and transmitting them to the county su-
perintendent. *Held,* That the occasion was not one of absolute
privilege, and that the defendant was liable at least on proof of
express malice in the publication.

ERROR to the district court for Saunders county.     Tried
below before MILLER, J.

*Simpson & Sornborger,* for plaintiff in error.

*George H. Hastings, Attorney General,* for the state.

IRVINE, C.

Vallery was convicted in the district court of Saunders
county of writing and publishing of and concerning one
Eliza King the following:

"April 18, 1891.     School District No. 49, Saunders
County, Neb.     Charges made by one Henry W. Vallery
against Eliza King.     *     *     *     Also, Eliza King did tell
one Henry W. Vallery that she did commit adultery with
one George R. Hassenplug, and one Will Morrow, and one
Will Larue, one Col. Odell, and one E. Emphrey, one
George Essex, one Gene Key, one Joe Samic, one Will
Emphres.     I, Henry W. Vallery, will swear that this is
true to the best of my belief and knowledge.

"HENRY W. VALLERY."

The evidence tended to show that prior to the publica-
tion of the writing, which formed the basis of the informa-
tion, Vallery had made similar oral statements to neighbors
of Miss King.     Miss King was a school teacher employed
in district 49 of Saunders county.     A meeting of the school
district was called for the purpose of taking some action on
the charges which had been circulated.     The precise object
of the meeting is generally stated by the witnesses to have
been to procure the formulation in writing of any charges

which might be preferred, in order that they might be transmitted to the county superintendent for his action. It does not seem to have been in the contemplation of those calling or holding the meeting to take any action themselves, and it is probable from the evidence that the circulation of these rumors had caused such a state of affairs in the district that it was deemed advisable to force an issue and in some manner dispose of the matter. The defendant argues, with great urgency, that the meeting was held in pursuance of a preconceived plan by Miss King and her father for the purpose of entrapping Vallery into a written publication of the charges in order that a criminal prosecution might be instituted. Such an inference, at least so far as Miss King's father is concerned, would be a reasonable, but by no means a necessary, inference from the testimony, and there is even slight evidence tending to show that Miss King was a participant in the acts resulting in the meeting, although her own testimony is positive to the contrary. When the meeting was called to order, its object was stated by the chairman and a general invitation was extended to any one who wished to make charges against Miss King to make them in writing. There was no response, and Vallery was directly requested to do so if he desired to make the charges. He hesitated and desired time to consider, but finally agreed to place his charges in writing if the meeting, by vote, so ordered. The meeting did so order, and the paper counted upon was then written at Vallery's dictation, read over to him, some emendations made, then signed by him, read aloud, and presented to the chairman, who forwarded it to the superintendent. On this state of facts the defendant contends that the evidence shows that the publication was at the instance and by the procurement of the person defamed, and that this constitutes a defense. The argument is general, but we presume that it is directed to the assignment of error that the verdict is not sustained by sufficient evidence, and to assignments relating to alleged

errors in the instructions.     We shall first consider the
question presented with relation to the instructions given
and refused.

The defendant requested several instructions, presenting
his theory of the case as above stated.  These were refused.
The court of its own motion instructed the jury that if the
complaining witness, or any one acting for her, requested
Vallery to appear at the meeting for the purpose of reduc-
ing the charges to writing, then this would create a case of
privilege; but if the jury should further find that the de-
fendant's acts at the meeting were not in good faith for the
purpose of discharging a duty, but that he was actuated by
express malice, then he would nevertheless be guilty.  The
defendant, in support of his view of the law, cites *King v.*
*Waring*, 5 Esp. [Eng.], 15 ; *Weatherston v. Hawkins*, 1
T. R. [Eng.], 110; *Smith v. Wood*, 3 Camp. [Eng.], 323.
These were all civil cases.  In *King v. Waring* the alleged
libel was contained in a letter written in response to an
inquiry as to the character of a servant.  The court said
that the issue was that in consequence of the letter the
plaintiff was prevented from getting a place, and if the
letter of inquiry was written, not with a fair view of inquir-
ing as to character, but to procure an answer upon which
to ground an action for libel, no action could be sustained.
*Weatherston v. Hawkins* was a similar case, and in that we
find the opinions of Lord Mansfield and of Mr. Justice
Buller, both to the effect that the communication was privi-
leged and that no malice was shown.  *Smith v. Wood* in-
volved only the question as to whether the exhibition to a
third person of a caricature at the request of such third
person was sufficient evidence of publication to support a
civil action.  Lord Ellenborough held, without an opinion,
that it was not.  None of these cases supports the conten-
tion of the defendant, and we are not aware that there ex-
ists, in the law of criminal libel at any rate, any doctrine
akin to that of contributory negligence, whereby a prose-

cution is barred if the person defamed has, in some manner, induced the publication.   Indeed, in civil cases we are not aware that the authorities have ever gone further than to hold that circumstances of provocation may be shown in mitigation of damages.   Nor do we think that the occasion was one of absolute privilege.   It has, indeed, been held that a school district board has authority to discharge as well as to hire a teacher (*Bays v. State*, 6 Neb., 167); but in so doing it acts as any other contracting party acts in determining to terminate a contract or refuse further performance.   It does not act judicially.   The power to revoke certificates upon notice and hearing is conferred upon the officers having power to grant the certificate,—in this case the county superintendent.  (Compiled Statutes, ch. 79, sub. 7, sec. 7.)   Conceding, for the purpose of argument, what the writer, speaking for himself, is by no means prepared to declare, to-wit, that a person making a charge to the superintendent, or presenting evidence before him, is entitled to the same protection as a party in filing his pleadings or a witness in testifying in court, still there would be no case of absolute privilege made out here.   The charges should be brought to the superintendent and not to the school meeting.   Taking the view of the law most favorable to the defendant, all that can be claimed is that the school meeting, being interested in the character of the teacher, if it called upon Vallery for information he would be protected, provided he acted on reasonable grounds of belief with good motives and for justifiable ends.   Express malice would render him liable.   This is what the court charged the jury, and the charge was in this respect as favorable to the defendant as the law would permit.

As to the sufficiency of the evidence little need be said. The proof adduced of the circumstances surrounding the case, and especially the vile and abusive language used by Vallery in testifying, convinces us, as it convinced the jury, beyond a reasonable doubt, that he was actuated by malice.

In the brief, complaint is made of certain rulings on the evidence, but there are no assignments of error relating thereto and they cannot be considered;

We are asked in case of affirmance to determine that the sentence was excessive and to reduce it accordingly. The trial judge imposed the extreme penalty allowed by the statute,—a fine of $500 and imprisonment for six months. We certainly cannot say that this punishment is excessive. We cannot readily conceive a libel of greater enormity than that of which the jury has found Vallery guilty. It may well be doubted whether our statutes in this regard provide penalties of sufficient severity to meet the ends of justice and prevent the defamation of character. We think this defendant may well congratulate himself that the law did not permit a more severe penalty to be inflicted.

JUDGMENT AFFIRMED.