## HENRY E. SHEPHERD vs. THOMAS S. BAER AND THE EVENING NEWS PUBLISHING CO.

*Libel—Reply to Attacks—Privilege—Demurrer.*

When the declaration in an action of libel sets forth defendant's publication and alleges that it amounted to a false, defamatory and malicious libel, a demurrer to the declaration admits only the publication of the article but not that it was libelous, that being a question of law.

A man against whom injurious charges have been made has a right to publish his refutation of the charges and to make any retort fairly arising out of the charges made, and in so doing is not guilty of libel unless he goes out of the way to attack with false allegations the character of the accuser.

Plaintiff had severely criticised the management of the public schools in Baltimore City, and advocated the passage of a bill then pending in the Legislature making a change in the school law. Defendant, a member of the School Board, published a letter in a newspaper replying to plaintiff's attacks, alleging among other things that plaintiff had formerly praised the School Board's management and that the change in his attitude was coincident with his failure to secure an appointment from the board which he had persistently sought, and saying in reply to certain charges made by plaintiff that "it is possible Mr. S. himself believes these things, but if he does believe them, it is because he has lost, if he ever possessed any degree of mental rectitude. He is unable to see anything connected with the schools except through the fog with which his own disappointments envelop his mental processes." *Held,* upon demurrer to the declaration, that the defendant's letter does not exceed the limits of legitimate self-defense, but is fairly relevant to the vindication of the School Board, and is consequently not libelous *per se.*

Appeal from the Baltimore City Court (SHARP, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE and JONES, JJ.

*George G. Shepherd,* for the appellant.

*Wm. Reynolds* (with whom was *John Prentiss Poe* on the brief), for Thos. S. Baer, appellee.

*Leon E. Greenbaum* (with whom were *Louis E. McComas*

and *George R. Gaither* on the brief), for the Evening News Co., appellee.

PAGE, J., delivered the opinion of the Court.

This is an action for libel. The Court below rendered judgment for the defendant on demurrer to the *narr.* and the plaintiff appealed.

It may be proper, in view of what was said at the argument, to state briefly the question that is before us, under the demurrer. In this, as in all other cases, a demurrer admits all facts, that are well pleaded. "Its office is to assert a legal proposition, that the pleading demurred to, is insufficient in law, to maintain the case shown by the adverse party." *Brook* v. *Widdicombe*, 39 Md. 401.

The gravamen of the declaration in this case is that the defendant published the article in question, and that it amounted to a "false, defamatory and malicious libel," to the injury of the plaintiff. The sole effect of the demurrer is to admit that the article was published as charged, but it does not admit that it is libelous ; that being a matter of law to be decided by the Court. It is not alleged in the *narr.* that the libel consists in misstatements of any of the facts set out in the article, nor that any of these statements are false. It is not libelous *per se* for instance to state that Mr. Shepherd published a certain letter in the *Sun*, if it were true that he did so ; and there being no averment in the *narr.* alleging it to be false, the Court cannot assume that the statement is false.

The single matter presented by this record is therefore the determination of the question whether the words of the publication are *per se* actionable ; and in order that they shall be so regarded, we must be able to hold upon a fair and full examination of the entire article that they charge upon or impute to the defendant that which tends to injure his reputation or expose him to hatred or contempt without lawful excuse therefor on the part of the defendant. *Negley* v. *Farrow*, 60 Md. 175; *Snyder* v. *Fulton*, 34 Md. 128; *Hagan* v. *Hendry*, 18 Md. 191.

There is no charge of express malice in the *narr.* and therefore there is no other malice except such as arises as a legal presumption from the use of the alleged defamatory words. If the article itself discloses such facts and circumstances as should afford a justification or legal excuse, then there can be no recovery, because of the fact that malice, which is a necessary requisite to constitute libel, will then be wanting. This Court has expressed this principle in the case of *Lewis* v. *The Daily News Co.*, 81 Md. 473, as follows : "Every publication injurious to the character, is, in law false and malicious, until the presumption of falsehood is met by plea of the truth, or the presumption of malice is removed by showing a justifiable occasion or motive."

With these preliminary observations we will now examine the publication as set out in the *narr.* It consists of two parts : a letter of the defendant Baer to the *News* and a short comment thereon and head-lines apparently by the newspaper. The head-lines are as follows : "The worm turns at last, School Board's silence broken by Commissioner Baer, Text of Professor Shepherd's letter given, Was once Ardent Admirer of Mr. Van Sickle." There is no innuendo explaining to whom the word *"worm"* refers, but we think it clear from the context that it must have reference to the School Board and not to the plaintiff. It is stated in the comment of the newspaper, that the attacks upon the School Board had been passed over in silence, until "today," when Mr. Baer sent his letter answering appellant's charges. It is evident that the School Board was the "worm" referred to, which had turned from its silence to explanation and answer.

It can be gathered from the article that the School Board had been attacked, that a bill in charge of Morgan and Campbell or one of them was pending in the Legislature, that Mr. Shepherd's attitude was hostile to the board, that he was to have a hearing before the Legislature the next day, which the members of the School Board had been invited to attend, and that the measures thus pending involved the propriety of changing the method of selecting School Commis-

sioners from the present plan to election by the people. On the Friday preceding, Prof. Shepherd had addressed to Mr. Campbell a letter, published in the *Sun*, in which he had indulged in grave comments on the schools and School Board. He charged therein that the "dominant *motive* of the present board is to discourage all local effort, capacity and attainment ; that they had decentralized them and legal restraint is removed from their direction ; that the schools "are little more than organized mobs ;" that "capable native teachers are thrust aside in behalf of aliens and strangers from the North and West, in no regard their superiors in acquirements or ability," that discipline of the schools "is almost destroyed, terrorism prevails among the teachers, "a stranger and *enemy* is the irresponsible and autocratic ruler of our school syatem" and that "if the preseut order continues for two years longer our schools will assuredly disintegrate." Mr. Baer was at that time a member of the School Board ; and as such may be presumed to have taken a strong interest in the bills pending before the Legislature, and to have had some desire to defend his own honor as well as that of his colleagues from such an attack. That he so felt is not a matter of conjecture. In the article complained of he says : "It has been my wish to abstain from all participation in the discussion of the issues raised by the Morgan and Campbell bills. * * * I have felt at the same time that the occasion might arise to cause me to break from the attitude of silence. My motives might be impugned rendering it necessary for me to defend my personal integrity or misstatements of fact might be made from a source entitled, or seemingly so, to consideration, imposing a duty upon me as a citizen to show their falsity. It *seems to me such an occasion has arisen.*" It appears therefore that the article was not published by Mr. Baer as a voluntary matter, without occasion or provocation. If we are to accept his statement (and we must do so in the present state of the pleadings), it was drawn from him by a sense of duty, in order to defend his impugned honor and to prevent the public from being misled by false statements. Under these circumstances,

it is only common fairness that the person assailed may defend his character and correct the misstatements in a temperate retort. It is almost a natural right that a person may at all proper times and places be permitted to defend his personal integrity and it is also a matter of importance that a citizen, a member of a board having charge of important public interests shall not be hindered from discharging the duty of removing and correcting misstatements respecting affairs of his own office. But in doing this, he must not exceed the bounds of legitimate criticism, and cannot avail himself of the occasion to make false charges of fact, or wanton and irrelevant assaults on another's character. *O' Conner* v. *Sill,* 60 Mich. 182. "Every man," says *Odgers on Libel and Slander,* sec. 228, "has a right to defend his character against false aspersion. If I am attacked in a newspaper, I may write to that paper to rebut the charges, and I may at the same time retort upon my assailant, when such retort is a necessary part of my defense or fairly arises out of the charges he has made against me." And so *Newell on Slander and Libel,* p. 519: "Every man has a right to defend his character against false aspersion. \* \* \* Therefore communications made in fair self-defense are privileged. \* \* A man who commences a newspaper war cannot subsequently come to the Court to complain that he has had the worst of it. \* \* The privilege extends only to such retorts as are fairly an answer to the attacks." *O'Donoghue* v. *Hussey,* Ir. R. 5 C. L. 124; *Chaffin* v. *Lynch,* 83 Va. 106; *Gasset* v. *Gilbert,* 72 Mass. 94; *Smith* v. *Smith,* 73 Mich. 445.

The question before us therefore comes to this ; has the defendant Baer made a fair answer to the attack of Professor Shepherd ; or has he availed himself of the occasion to indulge in false charges of fact or wanton or irrelevant assault upon him ?

In the outset of his criticism of the appellant's letter to Mr. Campbell, the defendant, Baer, examines the "source" from whence it came. He asks "who is Prof. Shepherd ?" and then proceeds to answer the inquiry by reproducing his letter

to the President of the School Board, in which he furnished a
very full and complete history of himself.    There is no alle-
gation in the *narr.* that it is not correctly quoted and it ap-
pears to be given without abbreviation.    The comment of the
defendant follows next, and as we read it, it seems to amount
to but little more than a fair exposition of the substance of
what the appellant had written, mingled with slight and not
ill-natured criticism.    The whole article is too lengthy to be
given here in full, and we will content ourselves with noticing
some of the parts of the criticism that the appellant claims are
libelous.    It is contended in the brief of the appellant that
under the head-line "A significant fact" the defendant has
charged that the plaintiff's attitude in advocating the passage
of the Morgan-Campbell school bill as not being due to his
honest belief that the School Commissioners should be elected
by the people, but to the low and contemptible motive of re-
venging himself upon the present Board of School Commis-
sioners for their failure to elect him Principal of the Western
High School.    But the words actually used do not of them-
selves have such an import and there is no inducement or in-
nuendo to explain and show that such was the meaning.    In-
deed, no innuendo could have been supported that imputed
to them such a meaning; for the reason that they are not sus-
ceptible of such an interpretation.    The " significant fact " re-
ferred to is the statement of Mr. Shepherd that he refused to
pay $500 as a political assessment and in consequence would
have been legislated out of office but for the manly opposition
of Mr. Wilmer.    That was significant because it accounted (in
Mr. Baer's opinion) for Mr. Shepherd's congratulations to
members of this board that the " old order of things had psssed
away ;" and furthermore that it made it obvious that his
present attitude towards the present board was not due to a
belief that the School Commissioners should be elected by the
people (as it is implied was formerly the case), but because
from Mr. Shepherd's point of view, the acts of the present
board were so flagrant and infamous, that a change in the mode
of selection would be welcome " even if it involved a return to

the conditions under which he lost" his money and nearly lost his place. There is here no charge that imputes anything discreditable to the appellant.

Under the head-line "Shepherd's high praise of Van Sickle" it is claimed there is a charge that the appellant's change of attitude towards the present board was due to the failure of the board to elect him Principal of the Western Female High School. All that the article states is that the change " was coincident with the failure of Professor Shepherd to secure the position which he so persistently sought." If this be true, and there is nothing in the record that enables us to pronounce it untrue, it is not a libel. It would then be pertinent, in considering the weight to be attached to the statement made in the Campbell letter. The anecdote appended to the remark seems to show that what the writer intended to be understood as meaning that possibly the disappointment in not securing the position had affected his judgment. And this construction is supported by the fact that after giving the reasons (not wholly uncomplimentary to Mr. Shepherd) why the writer did not support him for the position for which he had applied, it is stated, that " it is possible Mr. Shepherd himself believes these things and I do hope for the sake of his conscience that he does, but if he does believe them it is because he has lost if he ever possessed any degree of mental rectitude. He is unable to see anything connected with the schools *except* through the fog with which his own disappointments envelope his mental processes." It seems to us clear that in calling attention to the " coincidence " it was for the purpose of laying the ground for the statement made afterwards, that his " disappointment " had " enveloped " his mental processes. It may be stated also in connection that exception was taken to the use of the words " mental rectitude." These words do not convey the same idea as " moral rectitude " and the very next sentence shows that the writer did not intend that they should be so understood. Moreover the sentence in which they are found repels the idea that an imputation on the morals of the appellant was intended or could be so interpreted. His

want of " mental rectitude " is used in connection with the assumption that he honestly believed " these things." That is, if he honestly believed these things, he lacks " mental rectitude ; " or, to put it differently, if he honestly so believed, he was deficient in his mental processes, which condition of mind, in the next sentence, is accounted for by presuming the envelopment of the fog.

We have now gone through with as much of this article as is necessary to show the nature and scope of what the defendants have published. It would prolong this opinion too much to dwell upon every word or phrase which taken alone might be susceptible of a construction giving it an evil import. Upon the whole we think the article is dignified, without evidence of any evil intent towards Mr. Shepherd, and does not exceed the bounds of legitimate self-defense.

For these reasons the judgment will be affirmed.

*Judgment affirmed.*