M. E. RICHARDSON, *Appellant*, v. J. F. GUNBY, *Appellee*.

No. 17,650.

SYLLABUS BY THE COURT.

1. LIBEL—*Privileged Communications*. Where a letter is addressed to a bank or banker asking for information concerning the credit and standing of a business corporation and its officers, and a communication is sent in answer to the letter containing matter libelous *per se* against the secretary of the corporation but within the reasonable purview of the inquiry, and there is nothing in the correspondence indicating other than an honest purpose, the communication *prima facie* is conditionally privileged.

2. ——— *Privileged Communications — Malice — Burden of Proof*. In civil actions for libel where a communication of the nature referred to above is conditionally privileged, the burden of proof is upon the plaintiff to show malice or a wrongful purpose in publishing it.

3. LIBELOUS COMMUNICATION — *Induced by Party Libeled*. A person who instigates or procures a libelous communication to be published against himself, for the purpose of predicating a suit for damages upon it, can not recover in such an action. But if he instigates or sets on foot inquiries for the purpose of ascertaining the source of evil reports in order that they may be counteracted, or for any other proper purpose, and not for the purpose of predicating an action for damages in his own behalf, he is not estopped thereby from maintaining such an action.

Appeal from Wilson district court. Opinion filed November 9, 1912. Reversed.

*P. C. Young,* of Fredonia, for the appellant.

*T. J. Hudson, D. J. Sheedy,* and *E. D. Mikesell,* all of Fredonia, for the appellee.

The opinion of the court was delivered by

BENSON, J.: This is an action to recover damages for an alleged libel. E. H. Neal, of Indianapolis, Ind., addressed a letter to the Altoona State Bank asking for information concerning the Altoona Portland Cement Company and its officers. The letter stated that the company was bidding for investors. Responding to this inquiry the appellee, who was president of the bank, wrote a letter to Mr. Neal, in which it was stated that the cement company had been characterized as a paper concern by the state bank examiner; that none of its stock had been placed locally, because "no one locally has any faith in the integrity or ability of its officers. Its secretary is regarded as one of the most tricky men in this community and a good man to leave strictly alone and all of his projects." The letter otherwise reflected upon the credit and standing of the company and closed with the statement, "The above information is submitted in confidence and in reply to your inquiry for same and if of any value to you we will expect such information so treated," and was signed, "J. F. Gunby, President." The appellant was the secretary of the company. The language of the letter contained within the quotation was held to be actionable *per se* in *Schreiber v. Gunby,* 81 Kan. 459, 106 Pac. 276.

The answer admits that the defendant wrote the letter complained of, but alleges that he believed that his Indianapolis correspondent, whose letterhead bore the imprint, "Internal Revenue Service, 6th District of Indiana, Collector's Office," was an honorable man holding an office of trust under the government, and an investor honestly inquiring for information, and that he answered the letter in good faith and in confidence.

For a separate defense it was alleged that the letter of inquiry was written at the instance of the plaintiff as a decoy to induce the defendant to make some statement upon which to predicate an action. A demurrer filed to this defense was overruled. The verdict and judgment were for the defendant.

The first assignment of error argued by the appellant arises upon an instruction placing the burden of proof upon the plaintiff. The effect of this general instruction can best be understood by considering other cognate instructions with it. The jury were informed that the part of the letter quoted above referring to the secretary and officers of the company was actionable *per se;* but that malice must be proven before the plaintiff could recover, that is, that it must appear that the defendant was prompted to write the letter by a desire to injure the plaintiff. The requirement of proof of malice was placed upon the ground of privilege. The court said:

"The business man who receives a confidential inquiry relative to the business standing of some individual, firm or corporation may answer the same and his answer is qualified as privileged, that is, if his answer be fairly and honestly made in response to the inquiry and the things that he states he has reasonable and probable cause to believe true, the law will protect him and hold him harmless of damage. But, if, in response to an inquiry of this nature such individual makes false answers or answers with a reckless disregard as to whether or not the statements he makes are true, then and in that event, the law will not protect him."

It therefore appears that the burden placed upon the appellant by the general instruction complained of was to prove a wrongful motive on the part of the appellee.

The appellant contends that privilege was not pleaded. The petition alleged that the letter was not written or intended as a privileged communication. The

4—88 Kan.

answer contained a general denial and an averment
that the letter was written in good faith believing that
it was true, and for honest purposes, without malice or
intent to injure. Thus it appears that the question of
privilege was tendered by a negative averment in the
petition, and met by the affirmative allegations of good
faith in the answer. The pleadings are deemed suffi-
cient to present the question of privilege.

The privilege above referred to is not absolute, but
of the class called qualified or conditional, comprised
of cases where "The circumstances are held to preclude
any presumption of malice, but still leave the party
responsible if both falsehood and malice are affirma-
tively shown." (Cooley on Torts, p. 211; *Kirkpatrick
v. Eagle Lodge,* 26 Kan. 384.)

"A conditionally privileged publication is a publica-
tion made on an occasion which furnishes a *prima facie*
legal excuse for the making of it; and which is priv-
ileged, unless some additional fact is shown which so
alters the character of the occasion as to prevent it
furnishing a legal excuse. . . . The proper mean-
ing of a privileged communication is, 'that the occasion
on which it was made rebuts the inference arising
*prima facie* from a statement prejudicial to the char-
acter of the plaintiff, and puts it upon him to prove
that there was malice in fact.' " (Townshend on Slan-
der and Libel, 4th ed., § 209.)

Where a communication is made by one having a
duty to perform, and it is made in good faith in the be-
lief that it comes within the discharge of that duty, it
is privileged. (*Bradley v. Heath,* 29 Mass. 163; *Rude
v. Nass,* 79 Wis. 321, 48 N. W. 555, 24 Am. St. Rep. 717,
note p. 722.) The duty here referred to is not limited
to legal obligations, but extends to moral or social
duties of imperfect obligation. (*Pollasky v. Minchener,*
81 Mich. 280, 46 N. W. 5, 9 L. R. A. 102; Odgers on
Libel and Slander, 5th ed., p. 252.) With respect to
communications made upon business inquiries, the

author last cited at page 253 quotes Brett, L. J., in *Waller v. Loch*, 7 Q. B. D. 622:

"If a person who is thinking of dealing with another in any matter of business asks a question about his character from some one who has means of knowledge, it is for the interests of society that the question should be answered; and if answered *bona fide* and without malice, the answer is a privileged communication."

Of this nature is a letter from the cashier of a bank to a stockholder regarding the financial standing of a surety on an official bond to the bank. (*Rothholz v. Dunkle*, 53 N. J. Law, 438, 22 Atl. 193, 26 Am. St. Rep. 432.) Another illustration is a case where one seeks information concerning the trustworthiness of another who has applied to him for credit. An answer to the request for such information is privileged if made in good faith in the belief that the applicant desires the information for a proper purpose. (*Fahr v. Hayes*, 50 N. J. Law, 275, 13 Atl. 261.)

Other illustrative instances will be found in *King v. Patterson*, 49 N. J. Law, 417, 9 Atl. 705, *Billings v. Fairbanks*, 139 Mass. 66, 29 N. E. 544, *Briggs v. Garrett*, 111 Pa. St. 404, 2 Atl. 513, and in a note in 104 Am. St. Rep., 145 B.

Whether, upon a particular state of facts, a communication is privileged is a question of law to be determined by the court. But the question of good faith, belief in the truth of the statements and existence of malice are questions for the jury. (*Gassett v. Gilbert & others*, [6 Gray] 72 Mass. 94; *Hamilton v. Eno*, 81 N. Y. 116; *Rude v. Nass*, 79 Wis. 321, 48 N. W. 555.)

The communication containing the alleged libel was set out in the pleadings with the inquiry to which it related. There was nothing in the correspondence indicating other than an honest purpose. The reference to the officers, although actionable *per se*, was within the purview of the inquiry. In this situation good

faith might be presumed. The communication appeared therefore to be conditionally privileged. (*Lewis and Herrick v. Chapman*, 16 N. Y. 369, 375.) Within the rule just stated it was the duty of the court to consider it as privileged and to place the burden to prove malice, or a wrongful purpose in writing it, upon the plaintiff. (*Kirkpatrick v. Eagle Lodge*, 26 Kan. 384; *Klinck v. Colby et al.*, 46 N. Y. 427; *Denver P. W. Co. v. Holloway*, 34 Colo. 432, 83 Pac. 131, 114 Am. St. Rep. 171; Townshend on Slander and Libel, 4th ed., § 209.)

These views are in harmony with the principles decided in *Kirkpatrick v. Eagle Lodge*, supra, although that was a case arising out of lodge duties and membership. Analogous principles were also discussed in *Coleman v. MacLennan*, 78 Kan. 711, 98 Pac. 281.

The appellant contends that the separate defense relating to the alleged decoy letter was insufficient and that his demurrer thereto should have been sustained. This defense was thus stated:

"That the letter written by the said Neal to defendant heretofore set out in defendant's second defense, was written at the instance and request of the plaintiff, and that said letter was not written by the said E. H. Neal in good faith and as an honest inquirer after the truth, but was written for the purpose of inducing defendant to make some statement upon which plaintiff could predicate a suit in damages against this defendant, with the intent and purpose of injuring and embarrassing this defendant in his position of president of the Altoona State Bank."

The argument of the appellant is that such devices for the detection of crime are approved by judicial precedents, and the same rule should apply to one who assails reputation as to one who commits a crime. On the other hand it is argued by the appellee that the law will not tolerate a recovery of damages for a libel which a person has been instrumental in publishing against himself.

In *Vallery v. State,* 42 Neb. 123, 60 N. W. 347, in a prosecution for criminal libel it was held to be no defense to the writing where it was a repetition of previous oral statements although the defendant was induced to make the written publication by the acts of the person concerning whom the libel was published. The court said:

"We are not aware that there exists, in the law of criminal libel at any rate, any doctrine akin to that of contributory negligence, whereby a prosecution is barred if the person defamed has, in some manner, induced the publication." (p. 126.)

In *Howland v. Blake Manufacturing Co.,* 156 Mass. 543, 31 N. E. 656, a civil action, it was held that where no previous publication had been made, if the fact appear that the publication of the alleged libel was procured through the agency of a person acting for the plaintiffs and at their request, the publication was privileged. The court said that this was in accordance with the views expressed by English judges in cases cited and was sound in principle, and added:

"If the defendant is guilty of no wrong against the plaintiff except a wrong invited and procured by the plaintiff for the purpose of making it the foundation of an action, it would be most unjust that the procurer of the wrongful act should be permitted to profit by it." (p. 570.)

In *Melcher v. Beeler,* 48 Colo. 233, 110 Pac. 181, 139 Am. St. Rep. 273, a request for an instruction to the effect that the plaintiff could not recover if he had procured the writing of the letter complained of with a view of bringing an action upon it was approved. The court said:

"If the defendants were guilty of no wrong against the plaintiff with respect to the Finn letter except a wrong invited and procured by them to be committed for the purpose of making it the foundation of an action, it would be unjust to permit them to profit by it." (p. 248.)

(See, also, Odgers on Libel and Slander, 5th ed., pp. 294, 295.)

Whatever may be the rule in criminal cases where the object is punishment for a public offense, in a civil action a party can not be allowed to recover damages for a libel which he procured or instigated to be published against himself for the purpose of laying the foundation of a lawsuit for his own pecuniary gain. It would be contrary to the principles declared in analogous cases to sustain such an action. It follows that the demurrer to the defense referred to was properly overruled.

Another feature of the case closely related to this remains to be considered. In the tenth instruction the court, referring to the defense last considered, said:

"If this letter written by Mr. Neal was the result of a decoy letter sent to Mr. Gunby at the instance and request of Mr. Richardson, plaintiff can not recover for the reason that it would place the plaintiff in the situation of publishing a libel against himself, a thing which the law will not tolerate."

This statement lacks an important qualification. The reason why a person can not recover in such a case where he instigates or invites the libel is that he does it for the purpose of predicating an action for damages upon it. He may not thus assist in building up a cause of action for the purpose of gathering the fruitage to himself. If, however, the plaintiff instigated or set on foot the inquiry for the purpose of ascertaining whether the defendant, or the bank of which he was president, was disseminating evil reports concerning the cement company or its officers, in order that such influences might be counteracted, or for any other proper purpose, and not for the purpose of predicating an action for damages in his own behalf, he was not estopped from maintaining an action. In *King v. Waring et Ux.,* (Eng. 1803) 5 Esp. 13, Lord Alvanley said:

"The question is, If, in consequence of the letter so

written by the Defendant, and which letter was false and unfounded, the Plaintiff was prevented from getting a place? It has been decided, that giving a character to a servant, however injurious to them, yet if fairly given, would not sustain an action, but if the letter was procured by another letter, not written with a fair view of enquiring a character, but to procure an answer, upon which to ground an action for a libel, such evidence, I think, ought not to be admitted." (p. 15.)

This decision is quoted in Odgers on Libel and Slander, 5th ed., p. 296, as an illustration of the author's text on the subject of statements invited by the plaintiff, at page 294, already cited in this opinion. It is also quoted as an illustrative case in Newell on Slander and Libel, 2d ed., p. 518.

Following the instruction last quoted, if the jury found from the evidence that the so-called decoy letter was written at the instance and request of appellant, they were precluded from giving him a verdict regardless of his purpose or motive in causing the inquiry. This was an error affecting his substantial rights, and for this the judgment is reversed with directions to grant a new trial.