Carver v. Greason.

---

B. J. CARVER, *Appellant*, v. W. D. GREASON, *Appellee*.

No. 21,836.

SYLLABUS BY THE COURT.

1. LIBEL—*Public Officer—Misconduct in Office—Conditionally Privileged Communication.* An article printed in a newspaper, which has relation wholly to the official conduct of a public officer, and does not reflect upon his private character nor assail the integrity of his motives, is conditionally privileged, and will not support an action on his part for libel, notwithstanding it may not be true, if it was published in good faith—without actual malice.

2. SAME—*Public Officer—Express Malice Must be Shown.* To prevail in an action brought under such circumstances the plaintiff is required to plead and prove express malice. Malice is not presumed from the false and injurious character of the publication, although it may be inferred from the language used, if it is of a disproportionate, exaggerated, and sensational character. Otherwise it must be made to appear by extrinsic evidence.

3. SAME—*Actual Malice—Question for the Court.* Whether the language used in a particular case on its face constitutes evidence of actual malice is a question of law to be determined by the court.

4. SAME—*Newspaper Article—Does Not Show Malice on its Face.* An article in a newspaper alleging that a county attorney, before recommending the parole of a defendant who had pleaded guilty to a felony, had not made a vigilant investigation of his record or he would have discovered that he had previously been an inmate of a penitentiary,

held not to show malice on its face, although the conduct of the offi-
cer in that regard was characterized in somewhat offensive language.

5. SAME.   The extrinsic evidence held not to show actual malice.

Appeal from Miami district court; CHARLES A. SMART,
judge *pro tem.*   Opinion filed January 11, 1919.   Affirmed.

*B. J. Carver,* of Paola, *pro se.*

*Edward H. Coughlin,* and *R. E. Coughlin,* both of Paola, for
the appellee.

The opinion of the court was delivered by

MASON, J.:   W. D. Greason published in his newspaper an
article criticising the conduct of B. J. Carver as county attor-
ney.   Carver brought an action against him for libel.   A de-
murrer to the petition was sustained.   Upon appeal the ruling
was reversed on the ground that the article was not absolutely
privileged, inasmuch as it was not confined wholly to a narra-
tive of what had taken place in court, and that conditional
privilege would not render the petition demurrable, because
malice and a specific intent to injure were charged.   (*Carver
v. Greason,* 101 Kan. 639, 168 Pac. 869.)   Upon a remand the
plaintiff introduced his evidence, a demurrer to which was
sustained, and the case is now here on an appeal from that
ruling.

1. The matter charged to have been libelous had relation
wholly to the conduct of the plaintiff as a public officer.   It
did not reflect upon his private character, nor assail the in-
tegrity of his motives.   Therefore, it was conditionally privi-
leged.   (17 R. C. L. 353, and notes there cited.)   The plain-
tiff's manner of performing his official duties was a fair matter
for newspaper comment, and his status, so far as this case is
concerned, is substantially the same as that of a candidate for
election.

2. In order to prevail it was incumbent on the plaintiff to
show express malice.   (*Coleman v. MacLennan,* 78 Kan. 711,
98 Pac. 281; *Richardson v. Gunby,* 88 Kan. 47, 127 Pac. 533.)
Malice is not presumed from the falsity and injurious charac-
ter of a qualifiedly privileged publication, although it may be
inferred from the language used, if it is of a disproportionate,
exaggerated, and sensational character.   (17 R. C. L. 419;

Note, 12 L. R. A., n. s., 91.)    Otherwise it must be made to appear by extrinsic evidence.

3. Whether the language used in a particular case is in itself of such a nature as on its face to constitute evidence tending to show actual malice is a question of law for the determination of the court.    (Townshend, Slander and Libel, § 288.)

"It is a matter of law for the court to determine whether the occasion of writing or speaking criminatory language, which would otherwise be actionable, repels the inference of malice, constituting what is called a privileged communication; and if there is no intrinsic or extrinsic evidence of malice, it is the duty of the court to direct a nonsuit or verdict for the defendant." (*Neeb v. Hope,* 111 Pa. St. 145, 154.)

4. The article under consideration may be thus summarized: One Shearer pleaded guilty to a felony.    He and his attorneys asked the court for a parole.    It had been learned that he had passed several worthless checks on different people, but they had been reimbursed and joined in the request that he be paroled.    The plaintiff, as county attorney, recommended this course, saying that he thought it was Shearer's first offense.    The judge asked Shearer if he had ever been in trouble before, and on receiving a negative answer produced proof, which had been gathered by the sheriff, that he had served a term in the penitentiary of another state.    The application for a parole was denied, and Shearer received his sentence.

The petition alleged that the entire article was false.    On the cross-examination of the plaintiff, however, he was asked to point out the different statements that he claimed to be untrue, and aside from a clause in which it was said that the county attorney's advice to the court with reference to Shearer's parole had been given "in stentorian tones that could be heard at the Frisco depot," he indicated only the concluding portion of the article, reading as follows:

"The result demonstrates that vigilant investigation by the county attorney would have revealed the facts as ascertained by the sheriff. But the recommendation that Carver made to the court was at the solicitation of the attorneys for Shearer and the price he was paying for his subserviency to them.   Were it not for the action of Sheriff Chandler, the combined efforts of Shearer's counsel and the county attorney would have worked an injustice to the people of Kansas and would have sent a man scot free who in fact should be in the penitentiary.

"Less politics, less juggling, less collusion between the county attorney, and certain lawyers in Paola is necessary. This circumstance demonstrates that Miami county is in need of a bigger man in the office of county attorney than its present incumbent."

Notwithstanding the use of the words "subserviency," "juggling," and "collusion," this court does not think that the article, taken as a whole, can fairly be regarded as asserting that the plaintiff was actuated by any corrupt motive. The substantial charge against him—the only misfeasance or nonfeasance alleged—was that he did not make a vigilant investigation of Shearer's record—the form of the statement being that if he had done so he would have discovered the facts. The implication was obvious that he was not accused of concealing or suppressing any fact, or of any conscious wrongdoing. The offensive words quoted were used to characterize the conduct described—the failure to use proper diligence in prosecuting an inquiry—and must be interpreted in the light of that fact. Whether or not a vigilant investigation by the county attorney would have revealed the past history of Shearer was largely a matter of opinion, and while the defendant's criticism was expressed in somewhat severe terms, this court agrees with the trial court that it does not tend to show actual malice.

"The mere fact that language used is somewhat strong, or not altogether temperate, would not, in the absence of any indication that it was not used *bona fide*, be evidence of malice." (*Edmondson v. Birch & Co., Limited, and Harner* [1907], 1 K. B. 371, 381, 7 Ann. Cas. 192.)

"While the motives and private characters of public officials cannot be assailed in periodicals without subjecting their proprietors to actions for libel, in which they must assume the burden of establishing the truth of their defamatory assertions, criticism of all official acts may be safely indulged, and the language employed may be caustic and irritable in the extreme." (Note, 15 Am. St. Rep. 350.)

5. Nothing was shown in the circumstances surrounding the affair to change the *prima facie* aspect of the article. Practically all the evidence was directed to the question of its truth or falsity. The only item having a possible bearing upon the question of express malice was proof that some six months after the publication complained of, and while this litigation was pending, the defendant's paper had printed a statement that the plaintiff had been so overcome by his efforts and the

verdict in a murder trial that he had been unable to appear for the county in several other cases, but had hired another attorney to represent it, whereas in fact the plaintiff had tried the cases referred to, being assisted by the other attorney because a client of the latter had an interest in them. The plaintiff also made an offer, which was refused, to prove that he did not remember a single instance during his four years' service as county attorney where the defendant had given him a word of recommendation or commendation. We cannot regard evidence of this negative fact as having any tendency to show ill will or actual malice on the part of the defendant.

The judgment is affirmed.