No. 43,565

VERNE KENNEDY, *Appellee*, v. MID-CONTINENT TELECASTING, INC.,
a Corporation, *Appellant*.

(394 P. 2d 400)

Opinion filed July 23, 1964.

*H. Gordon Angwin,* of Pittsburg, argued the cause, and *John B. Towner,* also of Pittsburg, was with him on the brief for the appellant.

*J. John Marshall,* of Pittsburg, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

Schroeder, J.: This is a libel action by Verne Kennedy, a county commissioner of Crawford County, Kansas, (plaintiff-appellee) against Mid-Continent Telecasting, Inc. (defendant-appellant) for a publication carried over the defendant's television station on the 19th day of February, 1962. The petition was filed on the 9th day of May, 1962, and was attacked by a motion to make definite and certain and by a motion to strike, both of which were overruled. Thereafter, the defendant's demurrer was overruled and appeal has been duly perfected by the defendant from each of the foregoing orders.

The question is whether the trial court committed reversible error in overruling either of the foregoing motions and/or the demurrer.

The appellee's petition, omitting the caption and the beginning paragraph, alleges:

"I. That he is a resident of and his correct post office address is 614 West Jefferson, Pittsburg, Kansas; that on the date hereinafter mentioned and at the present time, he was and is the duly elected, qualified and acting County Commissioner in and for the Third Commissioner District of Crawford County, Kansas, and also is the owner and proprietor of a certain retail grocery store identified as Kennedy's Market, being located in Pittsburg, Kansas; that the defendant, Mid-Continent Telecasting, Inc., was and now is a corporation organized and existing under and by virtue of the laws of the State of Kansas with its principal place of business being located in Television City, Cherokee County, Kansas; that said defendant is engaged and licensed in the telecasting

business and operates and owns a television station located in Cherokee County, Kansas, said station being identified as KOAM-TV.

"II. That on or about the 19th day of February, 1962, at or about the hour of 5:40 o'clock P. M., *for the purpose of ruining plaintiff's reputation as a citizen and business man and in his official elected capacity, and exposing the plaintiff herein to public hatred, contempt, and ridicule and for the further purpose of depriving him of public confidence and to embarrasss him publicly,* the said defendant herein did maliciously publicize certain false and untrue statements concerning this plaintiff, said false and untrue statements being disseminated over its telecasting facilities; that at the time of the dissemination of said false and untrue statements, the defendant corporation, its officers, agents and employees, knew the same to be false and untrue; that the said material which was telecast and disseminated over defendant's telecasting facilities is hereto attached, marked 'Exhibit A' and is hereby made a part hereof.

"III. By reason of the defendant's publication and the dissemination of material above referred to throughout the State of Kansas and elsewhere, plaintiff has been deprived of public confidence, has been subjected to embarrassment, harassment, humiliation, anxiety and mental suffering and has been held in contempt and has been the subject of ridicule and scorn, all to his damage in the sum of One Hundred Thousand and No/100 Dollars ($100,000.00).

"IV. That by reason of the defendant's malicious, false and untrue publication of the material above mentioned, this plaintiff is entitled to and should be awarded *as exemplary or punitive damages the sum of One Hunderd Thousand and No/100 Dollars ($100,000.00).*

"WHEREFORE, this plaintiff prays judgment for compensatory damages in the sum of One Hundred Thousand and No/100 Dollars ($100,000.00), and for punitive or exemplary damages in the sum of One Hundred Thousand and No/100 Dollars ($100,000.00), or the total sum of Two Hundred Thousand and No/100 Dollars ($200,000.00), and for the costs of this action." (Emphasis added.)

Exhibit "A" attached to the petition and made a part thereof reads:

"CITIZENS OF CRAWFORD COUNTY:

". . . Now who is to be investigated? And why are they to be investigated?

"The official acts of D. J. Saia and Verne Kennedy, as County Commissioners of Crawford County, and Keeth Jones, as County Attorney, are among those sought to be investigated. . . .

"D. J. Saia and Verne Kennedy have been collecting mileage at an illegal rate per month ever since they have been in office, and in some instances even their meals have been paid by the County.

"As shown here, Kennedy's mileage and meals were $153.20, the meals being $30.00.

"As shown here, Saia's mileage and meals were $150.55, the meals being $22.50. We have certified copies of these vouchers and these are unlawful

claims against the county. For county officials to acquire property, either directly or indirectly, at a judicial tax sale is a criminal offense. . . .

"At the same tax sale Charles Wyman, Kennedy's father-in-law, bought six lots in College View addition to Pittsburg, and six months later deeded the land over to Kennedy so he can build a trailer court. Here you have Kennedy and Saia dealing in tax sales. I have here in my hand the certified copies showing these purchases.

". . . The County Commissioners who voted for Gendusa's appointment are subject to prosecution for an unlawful claim against the county.

"On December 7, 1960, W. T. Niggemann, County Engineer of Crawford County, testified under oath before the Board of Tax Appeals that the budget had been exceeded by $21,178.25.

"He further testified that five extra men were employed in Commissioner Goodison's district, at a cost of $1,988.60; that thirteen men were employed in Commissioner Saia's district, all of which cost $2,408.00, and that twenty-four men—extra men—were employed in Commissioner Kennedy's district, which cost $13,251.70.

"Keep in mind that 1960 was an election year. Also here is the total amount that was spent—$17,648.30, for extra labor alone, not counting materials used by these extra men.

"All these facts and figures are shown in this official transcript of the hearing, which I hold in my hand.

"All this exceeding the budget was done at the direction of the Board of County Commissioners.

"The County Commissioners of Crawford County who voted to exceed the budget are subject to criminal prosecution for violating the budget law and cash basis law of the State of Kansas. . . .

"I have in my hand a certified copy of the voucher in the office of the County Clerk of Crawford County showing these facts to be true.

"Now keep in mind that D. J. Saia and Verne Kennedy had to and did approve the allowance of the claims as above set forth against the County.

"These two Commissioners at all times constituted a majority of the Board of County Commissioners. No competitive bids were taken for the above charges furnished the county. . . ."

The appellant by motion sought an order of the trial court requiring the appellee to make his petition more definite and certain in the following particulars:

"1. To state who made said statements alleged to be defamatory over the visual broadcasting facilities of the Defendant, and whether or not such person was the owner or operator of said broadcasting facilities, or the agent or employee of the owner or operator of said broadcasting facilities.

"2. That the Plaintiff set forth the complete and full text of the statement alleged to have been publicized on or about the 19th day of February, 1962, at about the hour of 5:40 o'clock P. M., by the Defendant.

"3. That Plaintiff allege acts of actual malice on the part of the Defendant.

"4. That Plaintiff allege items of special damage to him by reason of the publicizing of the said alleged defamatory statement."

This court held in *Mead v. City of Coffeyville,* 152 Kan. 799, 107 P. 2d 711, that while a ruling on a motion to make a pleading definite and certain is not ordinarily an appealable order, the propriety of the order overruling the motion will be considered on review of an order overruling a general demurrer to the same pleading. In the opinion the court said:

"It is true a ruling on a motion to make definite and certain ordinarily rests in the sound discretion of the trial court and therefore is ordinarily not reviewable. (*Nelson v. Schippel,* 143 Kan. 546, 56 P. 2d 469; *Nardyz v. Fulton Fire Ins. Co.,* 151 Kan. 907, 101 P. 2d 1045.) Where, however, the ruling constitutes an abuse of sound judicial discretion and prejudices a substantial right, it is reviewable. (*Hasty v. Bays,* 145 Kan. 463, 465, 66 P. 2d 265; *Lofland v. Croman,* 152 Kan. 312, 316, 103 P. 2d 772.) It has also been held that the test of whether the ruling is reviewable is whether the allegations of the petition are so indefinite and uncertain that the true nature of the charge is not apparent. (*Lofland v. Croman,* supra, p. 316, and cases cited.) . . ." (p. 801.)

We shall first direct our attention to the various paragraphs of the appellant's motion to make definite and certain.

Should the trial court have required the appellee to state who made the statements alleged to be defamatory over the visual broadcasting facilities of the appellant?

G. S. 1961 Supp., 60-746a provides in part:

"The owner, licensee or operator of a visual or sound radio broadcasting station or network of stations, and the agents or employees of any owner, licensee or operator, shall not be liable for any damages for any defamatory statement or matter published or uttered in or as a part of a visual or sound radio broadcast, by one other than such owner, licensee or operator, or agent or employee thereof, unless it shall be alleged and proved by the complaining party, that such owner, licensee, operator or such agent or employee, has failed to exercise due care to prevent the publication or utterance of such statement or matter in such broadcast: . . ."

It is charged by the appellant that neither the name of the person making the libelous statements nor such person's connections with the appellant were alleged.

Information is contained in the briefs to the effect that the speaker of the alleged libelous matter was a private individual, who was not a political opponent of the appellee, and who personally purchased television time and advertised his appearance in advance.

These facts are not a part of the pleading under attack. The petition specifically alleges that the appellant published the libelous matter.

The appellant argues that under the above statute a visual broadcasting station is not liable for any damages, if the alleged defamatory statements are made by one not connected with the station, unless the station failed to exercise due care to prevent the publication of such statements. Where this situation exists, the appellant contends, the action is a negligence action and not a libel action, citing *Beyl v. Capper Publications, Inc.*, 180 Kan. 525, 528, 305 P. 2d 817.

The simple answer to the appellant's argument on this point is that the trial court, in the exercise of its power of discretion, overruled paragraph No. 1 of its motion to make definite and certain on the ground that the appellant could show, as a matter of defense, that the person making the statements was not connected with the station, and that due care had been exercised. As the petition now stands, it charges that the appellant, which includes the telecasting station, its agents and employees, made the libelous statements. As such, the provisions of 60-746a, *supra,* have no application. On this point the trial court's ruling did not prejudically affect the appellant's substantial rights.

Paragraph No. 4 of the motion to make definite and certain seeks to require the appellee to allege items of special damage. The appellant concedes that unless paragraph No. 1 of its motion is sustained, in which event the action would of necessity be a negligence action under the statute, the allegation of special damages would not be required. Under the circumstances, therefore, this paragraph of the appellant's motion has no merit.

Paragraph No. 2 and paragraph No. 3 of the appellant's motion are closely related. We shall first consider paragraph No. 3 which asks that the appellee be required to allege acts of actual malice on the part of the appellant.

The point to which this paragraph of the motion is directed concerns conditionally privileged communications which are alleged to be defamatory.

This court has held an article printed in a newspaper, which has relation wholly to the official conduct of a public officer, and does not reflect upon his private character nor assail the integrity of his motives, is conditionally privileged, and will not support an action on his part for libel, notwithstanding it may not be true, if it was published in good faith—without actual malice. To prevail in an action brought under such circumstances, the plaintiff is required

to plead and prove express malice. Malice is not presumed from the false and injurious character of the publication, although it may be inferred from the language used, if it is of a disproportionate, exaggerated and sensational character. Otherwise it must be made to appear by extrinsic evidence. Whether the language used in a particular case is in itself of such a nature as to show on its face that it constitutes evidence tending to show actual malice is a question of law to be determined by the court. (*Carver v. Greason,* 104 Kan. 96, 177 Pac. 539.)

Although doubt has been expressed that any publication of defamatory matter is absolutely privileged, it may be said that absolute privilege is recognized as applying to cases in which the public service or the administration of justice requires complete immunity, as in legislative, executive and judicial proceedings, the occasion for the immunity being not so much for those engaged as for the promotion of the public welfare. (*Baker v. Haldeman-Julius,* 149 Kan. 560, 564, 88 P. 2d 1065.)

A conditionally privileged communication is a publication made on an occasion which furnishes a legal excuse, *prima facie,* for its utterance; and which is privileged, unless some additional fact is shown which so alters the character of the occasion as to preclude it from being a legal excuse. (*Baker v. Haldeman-Julius,* supra, p. 565.)

In *Carver v. Greason,* 101 Kan. 639, 168 Pac. 869, the plaintiff sought to recover damages for libel in an article concerning his activities as county attorney. The defendant's demurrer to the petition was sustained. On appeal to this court the ruling of the trial court was reversed, it being stated in the opinion:

"The defendant contends that the article contained an account of a judicial proceeding, with comment upon it, and that even if false, the publication was privileged. The narrative portions of the article and the comments extended considerably beyond what took place in court, and the petition, which must be taken as true for present purposes, charged the falsity of the entire article. Besides this, malice and a specific intent to injure the plaintiff were charged. The result is that the defense of privilege can not be made out from the face of the petition." (p. 641.)

The Kansas law with respect to pleading malice in cases involving conditional privilege of alleged defamatory statements requires more than the pleading of a naked conclusion that the statements were maliciously made.

The distinction as to the proper and improper pleading of malice is best illustrated in *Baker v. Haldeman-Julius*, supra, where it was said in the opinion:

"Even though it be assumed the petition disclosed the offending article was published under such circumstances that it might be said to be prima facie conditionally privileged, it clearly appears that the truth of the article in all its parts is denied, and it is specifically alleged that the publication was made 'deliberately, willfully, maliciously and recklessly' and 'for the deliberate purpose of injuring plaintiff's reputation, his standing for honesty and integrity,' etc. Perhaps the adverbs did not help, but the other allegation is sufficient to charge express and willful intent to harm—an evil intent. The demurrer admits these allegations. . . ." (p. 566.)

A recent case upon which the appellant relies is *Stice v. Beacon Newspaper Corporation*, 185 Kan. 61, 340 P. 2d 396, 76 A. L. R. 2d 687.

The court there reiterated rules heretofore stated and applied them to the facts alleged. A resort to the abstract and briefs in that case, which are on file in the state library, discloses that the petition nowhere alleged that the statements of a defamatory nature were made for the purpose of injuring the plaintiff. The petition alleged the publication falsely, maliciously and wrongfully charges, accuses, contains and imputes to the plaintiff statements that impute he is a criminal; statements that impute dishonesty affecting his profession as an attorney at law; statements that tend to bring him into disrepute in the estimation of the people in the community where he lives; statements that tend to deprive him of public confidence; statements that leave an imputation of the lack of his qualifications to be a judge; etc. It must be observed that such recitals in the petition merely allege the *effect* of the statements.

In the appellee's brief in the *Stice* case it is said:

"Plaintiff does not, at any place in his petition, allege that the publications were *made with an active desire or intention to harm or injure plaintiff*, nor is there any language from which such a desire might be inferred. In the absence of such factual allegations, there is no allegation of express malice and in the absence of such an allegation, the petition does not state a cause of action." (Emphasis added.)

In passing upon the foregoing, this court said in the opinion:

"The remaining question is whether plaintiff's amended petition alleges actual malice—evil-mindedness, or intent to harm on the part of the defendant. Giving the allegations of the amended petition all inferences to which they are entitled, we conclude that it does not. Although plaintiff alleged several times the articles were printed and published 'maliciously' and 'wrongfully' *there are*

*no factual allegations of actual malice or evil-mindedness with intention to harm.* Malice is merely a conclusion of law which is based upon facts. Standing alone, allegations of 'maliciously' and 'wrongfully' are mere conclusions. Where a petition in a libel action discloses facts constituting a qualified privilege thus necessitating the pleading of actual malice to render such a communication actionable, it has been held that a mere averment that the words printed or published were malicious, is not sufficient (53 C. J. S., Libel and Slander, § 166b, p. 262). The use of denunciatory adverbs such as 'maliciously' and 'wrongfully' will not suffice to plead a cause of action where the petition *discloses facts constituting a qualified privilege.* To withstand a demurrer, the plaintiff must allege the ultimate facts constituting actual malice. . . ." (p. 67.)

Assuming the petition herein discloses that the offending statement was published under such circumstances that it might be said to be *prima facie* conditionally privileged, it clearly appears that the truth of the statement in all its parts is denied, and it is specifically alleged that the publication was made "maliciously" and "for the purpose of ruining plaintiff's reputation as a citizen and businessman and in his official elected capacity, and exposing the plaintiff herein to public hatred, contempt, and ridicule and for the further purpose of depriving him of public confidence and to embarrass him publicly."

While the word "maliciously" under our law would constitute a conclusion and be insufficient to overcome the conditional privilege, the other allegations are sufficient in that they charge an express and willful intent to injure—an evil intent. (See, annotation in 76 A. L. R. 2d 696, entitled "Sufficiency of plaintiff's allegations in defamation action as to defendant's malice.") Therefore, the trial court properly determined this point in that the petition did allege actual malice—an evil intent.

Concern is expressed over the recent United States Supreme Court decision of *New York Times Company v. Sullivan* [Mar., 1964] 376 U. S. 254, 11 L. Ed. 2d 686, 84 S. Ct. 710. This decision does not require any change in Kansas law. In the opinion the court said:

"We hold today that the Constitution delimits a State's power to award damages for libel in actions brought by public officials against critics of their official conduct. Since this is such an action, the rule requiring proof of actual malice is applicable. While Alabama law apparently requires proof of actual malice for an award of punitive damages, where general damages are concerned malice is 'presumed.' Such a presumption is inconsistent with the federal rule. 'The power to create presumptions is not a means of escape from constitutional restrictions,' *Bailey v. Alabama*, 219 U. S. 219, 239, 'the showing

of malice required for the forfeiture of the privilege is not presumed but is a matter for proof by the plaintiff. . . .' *Lawrence v. Fox*, 357 Mich 134, 146, 97 N. W. 2d 719, 725 (1959). . . ." (p. ____.)

The court also said in its opinion:

"The constitutional guarantees require, we think, a federal rule that prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not. An oft-cited statement of a like rule, which has been adopted by a number of state courts, is found in the Kansas case of *Coleman v. MacLennan*, 78 Kan. 711, 98 P. 281 (1908). . . ." (p. ____.)

The opinion then reviews the *Coleman* case and quotes the opinion written by Justice Burch in the following language:

". . . On appeal the Supreme Court of Kansas, in an opinion by Justice Burch, reasoned as follows (78 Kan., at 724, 98 P., at 286):

" 'It is of the utmost consequence that the people should discuss the character and qualifications of candidates for their suffrages. The importance to the state and to society of such discussions is so vast, and the advantages derived are so great, that they more than counterbalance the inconvenience of private persons whose conduct may be involved, and occasional injury to the reputations of individuals must yield to the public welfare, although at times such injury may be great. The public benefit from publicity is so great, and the chance of injury to private character so small, that such discussion must be privileged.'

"The court thus sustained the trial court's instruction as a correct statement of the law, saying:

" 'In such a case the occasion gives rise to a privilege, qualified to this extent: any one claiming to be defamed by the communication must show actual malice or go remediless. This privilege extends to a great variety of subjects, and includes matters of public concern, public men, and candidates for office.' 78 Kan., at 723."

In view of our conclusion that actual malice has been alleged, thereby overcoming the conditional privilege afforded the appellant, consideration of paragraph No. 2 of the motion to make definite and certain becomes immaterial. The allegations in the petition, which includes an excerpt of the defamatory statement, are not so indefinite and uncertain that the true nature of the charge is not apparent. (*Mead v. City of Coffeyville*, 152 Kan. 799, 107 P. 2d 711.)

Should an issue eventually develop as to what defamatory statements were made, the answer must be determined by the evidence at the trial.

The appellant's motion to strike seeks to have stricken from the petition all allegations making reference to the appellee as the owner and proprietor of a certain retail grocery store identified as Kennedy's Market, and all reference to him as a businessman. The motion also sought to have stricken allegations relating to exemplary or punitive damages.

It cannot be said the trial court abused the exercise of its power of discretion in overruling the motion to strike. If the appellee proves actual malice at the trial, punitive damages may be awarded. Reference to the appellee as the proprietor of a retail grocery store and as a businessman does not alter the fundamental character of the pleading, which charges that he has been defamed as a public official. These allegations neither add to nor detract from the pleading. There are no allegations to indicate that the claimed defamatory words used in the publication related to the appellee's conduct or abilities in carrying on his grocery business. (*Koerner v. Lawler,* 180 Kan. 318, 322, 304 P. 2d 926.)

The general demurrer of the appellant charges only that the petition does not state facts sufficient to constitute a cause of action against the appellant. The attack upon the petition is made primarily upon the ground that the trial court erred in ruling upon the foregoing motions.

For the reasons heretofore stated, the trial court properly overruled the demurrer to the petition.

The judgment of the lower court is affirmed.

FATZER, J., dissenting: It is well settled in this jurisdiction that newspapers and television stations have a qualified privilege to publish and telecast as current news, all matters involving open violations of the law which justify police interference, and matters in connection with inquiries regarding the commission of crime, even though the publication may reflect upon the individuals concerned and tend to bring them into public disgrace (*Beyl v. Capper Publication, Inc.,* 180 Kan. 525, 305 P. 2d 817, and *Stice v. Beacon Newspaper Corporation,* 185 Kan. 61, 65, 340 P. 2d 396, 76 A. L. R. 2d 687), and that where the subject of the article is a public official, so much of this private character as affects his fitness for public office is subject to a wider latitude of public scrutiny and discussion than that of a private citizen (*Stice v. Beacon Newspaper Corporation,* supra).

In my opinion, the district court erred in failing to sustain paragraph two of the appellant's motion which would have required the plaintiff-appellee to attach the complete and full text of the statement alleged to have been publicized on February 19, 1962, and which he contends constituted a defamatory statement. Only when the full text of the statement is attached to the petition can it be determined whether the article in question was qualifiedly privileged as being a fair comment on matters in connection with a grand jury investigation regarding the commission of crime by certain county officials in Crawford County.

I would reverse the judgment with directions to require the plaintiff to attach to the petition the full text of the statement. It is obvious from a casual reading of the statement alleged to be libelous, that an official investigation of some character was being conducted in Crawford County, which revealed that the plaintiff had violated the criminal statutes of the state as a county commissioner. The question whether the plaintiff has alleged the ultimate facts constituting actual malice, evil-mindedness, or a wicked purpose to injure the plaintiff should only be inquired into after it is determined as a matter of law that the publication is or is not qualifiedly privileged.