No. 114,285

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

T.H., and C.C., Individually, and R.N.C., by and through Her Next Friend and Natural Mother, T.H.,
*Appellants*,

v.

UNIVERSITY OF KANSAS HOSPITAL AUTHORITY d/b/a UNIVERSITY OF KANSAS HOSPITAL and FRANCESCA PEREZ-MARQUES, M.D.,
*Appellees*.

SYLLABUS BY THE COURT

1.

K.S.A. 2015 Supp. 38-2223(f) provides immunity to doctors who negligently misdiagnose child abuse.

2.

Malice is the intent to do harm without any reasonable justification or excuse. To prove actual malice a plaintiff must show that the defendant acted with actual evil-mindedness or specific intent to injure.

3.

When the cause of action depends on a showing that the defendant acted with malice, to withstand a motion to dismiss for failure to state a claim, the petition must sufficiently allege a specific intent to injure.

4.

Notice pleading did not do away with the traditional causes of action or the need to at least present the bare bones of the cause of action in the petition in a concise and

1

understandable manner; the claim is to be provided by the petitioner and not by the supposition of the court.

Appeal from Wyandotte District Court; DANIEL A. DUNCAN, judge. Opinion filed January 6, 2017. Affirmed.

*James M. Crabtree*, of Crabtree Law Office, of Lenexa, for appellants.

*Janet M. Simpson* and *Casey L. Walker*, of Simpson, Logback, Lynch, Norris, P.A., of Overland Park, for appellee University of Kansas Hospital Authority.

*M. Bradley Watson*, *Scott K. Logan*, *Jeff K. Brown*, *Christopher H. Logan*, and *David M. Tyrrell*, of Logan, Logan & Watson, L.C., of Prairie Village, for appellee Francesca Perez-Marques, M.D.

Before STANDRIDGE, P.J., ARNOLD-BURGER and BRUNS, JJ.

ARNOLD-BURGER, J.:  T.H. and C.C., individually, and R.N.C., by and through her next friend and natural mother, T.H., (Parents) brought suit against Dr. Francesca Perez-Marques and the University of Kansas Hospital Authority (KU) alleging that Perez-Marques committed malpractice when she misdiagnosed that 9-month-old R.N.C. had been sexually abused. The district court dismissed the action, finding that both parties were immune from suit under K.S.A. 2015 Supp. 38-2223(f) which protects certain individuals from civil liability for reporting suspected child abuse. Parents appeal the dismissal of their suit. Because we find that K.S.A. 2015 Supp. 38-2223(f) provides immunity to doctors who negligently misdiagnose child abuse and there were no facts alleged in the pleadings that could lead us to infer that the doctor's actions were taken with a specific intent to injure the parents and their child, we affirm the district court's dismissal of this action.

2

## FACTUAL AND PROCEDURAL HISTORY

T.H. and C.C. took their 9-month-old daughter R.N.C. to Dr. Perez-Marques at KU for a respiratory infection. After examining R.N.C., Perez-Marques suspected that R.N.C. had been the victim of severe, chronic sexual abuse. She alerted the police and, with the aid of nurses at KU, conducted HIV and STD testing on the child.

Parents filed suit against Perez-Marques and KU (Perez-Marques) seeking relief for the pain, suffering, mental anguish, medical intrusion, humiliation, outrage, medical expense, and economic loss they suffered as a result of Perez-Marques' report. In their petition, Parents allege: that Perez-Marques misdiagnosed sexual abuse; that there was no medical or factual basis for Perez-Marques' belief that R.N.C. had been abused; that Parents were told of the abuse in a way that was extreme and outrageous; and, that Perez-Marques' actions intentionally and/or recklessly inflicted emotional distress on Parents.

In response to the petition, KU filed a motion to dismiss for failure to state a claim upon which relief can be granted and Perez-Marques raised the same issue as an affirmative defense in her answer. Parents made no attempts to amend their pleading but instead argued that it contained sufficient facts from which the court could infer malice. After a hearing on the matter, the district court dismissed Parents' suit, finding that Parents failed to sufficiently allege that Perez-Marques acted with malice and accordingly statutory immunity should be extended to both defendants.

Parents now appeal.

## ANALYSIS

Parents appeal the district court's grant of Perez-Marques' K.S.A. 2015 Supp. 60-212(b)(6) motions to dismiss for "failure to state a claim upon which relief can be

granted." A description of this court's standard of review on appeal must start by recounting the way a district court evaluates a K.S.A. 2015 Supp. 60-212(b)(6) motion:

> "When entertaining a motion to dismiss for failure to state a claim, the district court is required to assume that the facts alleged by the plaintiff are true. It is then required to draw any reasonable inferences from those facts and determine whether the facts and inferences state a claim, not only on the theory espoused by the plaintiffs, but on any possible theory the court can divine. There are sound reasons for a certain degree of judicial skepticism toward such motions. Under Kansas' notice pleading, a petition is not intended to govern the entire course of the case. Rather, the ultimate legal issues and theories on which the case will be decided are reduced to writing in the pretrial order, typically entered at the close of discovery." *Nungesser v. Bryant*, 283 Kan. 550, 559, 153 P.3d 1277 (2007).

On appeal, this court provides similar review, upholding the district court's decision to grant a motion if the "allegations contained in [the petition] were not legally cognizable." 283 Kan. at 559. Additionally, to the extent that this appeal requires this court to interpret K.S.A. 2015 Supp. 38-2223, review is unlimited. *Neighbor v. Westar Energy, Inc.*, 301 Kan. 916, 918, 349 P.3d 469 (2015).

In this appeal, Parents argue that the district court either misinterpreted or misapplied K.S.A. 2015 Supp. 38-2223 to grant Perez-Marques' motion to dismiss. K.S.A. 2015 Supp. 38-2223 makes various groups of people, including physicians and nurses, mandatory reporters in the event that they have "reason to suspect that a child has been harmed as a result of physical, mental or emotional abuse or neglect or sexual abuse." K.S.A. 2015 Supp. 38-2223(a)(1)(A). The statute makes it a misdemeanor to willfully and knowingly fail to make a report when abuse is suspected. K.S.A. 2015 Supp. 38-2223(e). At the same time, it provides civil immunity to "[a]nyone who, without malice, participates in the making of a report to the secretary or a law enforcement

4

agency relating to a suspicion a child may be a child in need of care or who participates in any activity or investigation relating to the report." K.S.A. 2015 Supp. 38-2223(f).

Parents make two specific allegations of error based on K.S.A. 2015 Supp. 38-2223, each of which will be discussed below.

*K.S.A. 2015 Supp. 38-2223(f) grants immunity to medical professionals who report suspected sexual abuse even in situations in which the abuse was misdiagnosed.*

First, Parents argue that the district court improperly interpreted K.S.A. 2015 Supp. 38-2223(f) as providing immunity for malpractice. This argument is premised on Parents' belief that the doctor's report of suspected sexual abuse constituted malpractice because it equated to a misdiagnosis of abuse. While Kansas appellate courts have not previously addressed such an argument, the Missouri Court of Appeals, applying Kansas law, held that K.S.A. 38-1526's (now K.S.A. 2015 Supp. 38-2223) grant of immunity covers medical malpractice claims based on allegations that a doctor misdiagnosed abuse. *D.L.C. v. Walsh*, 908 S.W.2d 791, 798-99 (Mo. App. 1995).

In reaching its holding, the Missouri court first considered that the Kansas Legislature clearly articulated the policy goal behind K.S.A. 2015 Supp. 38-2223. The stated goal is to "'provide for the protection of children who have been subject to physical, mental or emotional abuse or neglect or sexual abuse by encouraging the reporting of suspected child abuse and neglect.'" 908 S.W.2d at 798; see also K.S.A. 2015 Supp. 38-2201 (current location of the language cited by the *D.L.C.* court). The *D.L.C.* court concluded that "[t]he goal of encouraging the reporting of suspected child abuse is better met when those attempting to comply with the statute are confident that no civil liability will result therefrom." 908 S.W.2d at 798.

5

The *D.L.C.* court next considered the fact that failure to report suspected abuse is a misdemeanor offense. 908 S.W.2d at 799. The court reasoned that "[i]f immunity did not apply to the negligent misdiagnosis of child abuse, health care providers would face a dilemma. By reporting suspected abuse, they would open themselves up to malpractice actions, but by declining to make a report, they could be guilty of a misdemeanor." 908 S.W.2d at 799. The court concluded that the Kansas Legislature could not possibly have intended to put doctors in such a perilous position.

Finally, the Missouri court considered cases from other jurisdictions with similar reporting statutes. It found that courts from other jurisdictions have concluded that immunity applies both to the diagnosis and reporting of suspected child abuse. 908 S.W. 2d at 799 (citing *Watterson v. Page*, 987 F.2d 1, 10 [1st Cir. 1993]; *Awkerman v. Orthopedic Group*, 143 Mich. App. 722, 726, 373 N.W.2d 204 [1985]; *May v. S.E. Wyoming Mental Health Ctr.*, 866 P.2d 732, 738 [Wyo. 1993]). In addition to the cases cited by the *D.L.C.* court, courts in numerous other jurisdictions have interpreted similar immunity statutes to include claims alleging misdiagnosis of child abuse. See, *e.g.*, *Anonymous Hosp. v. A.K.*, 920 N.E.2d 704, 709 (Ind. App. 2010) (noting that Kentucky and West Virginia have similar statutes that have been interpreted to provide immunity for misdiagnosis as well as reporting); *Maples v. Siddiqui*, 450 N.W.2d 529, 531 (Iowa 1990) (citing to cases out of Louisiana, Montana, and North Carolina granting broad immunity).

Parents summarily contend that the *D.L.C.* court misapplied Kansas law and ignored the plain meaning of the statute in reaching its result. Contrary to Parents' contention, we find that the Missouri court properly interpreted Kansas law. The Kansas Supreme Court has instructed that the most fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. *Neighbor*, 301 Kan. at 918. When attempting to ascertain legislative intent, an appellate court must first look to the language of the statute itself, giving common words their ordinary meaning.

6

*Cady v. Schroll*, 298 Kan. 731, 738, 317 P.3d 90 (2014). The court should refrain from reading something into a statute that is not readily found in its words. 298 Kan. at 738-39.

Our legislature, as recognized by the Missouri court, has clearly explained its intent in enacting the revised Kansas Code for Care of Children which includes K.S.A. 2015 Supp. 38-2223. See K.S.A. 2015 Supp. 38-2201. The legislature intended for the code to be "liberally construed to carry out the policies of the state," among which are to "encourage the reporting of suspected child abuse and neglect." K.S.A. 2015 Supp. 38-2201(b)(5). One of the ways in which the legislature has attempted to encourage reporting is by providing immunity from suit for those who make reports. See K.S.A. 2015 Supp. 38-2223(f). The immunity provided by the statute is broad and applies to all who participate in "the making of a report" as well as to anyone "who participates in any activity or investigation relating to the report." K.S.A. 2015 Supp. 38-2223(f).

Parents' contention that K.S.A. 2015 Supp. 38-2223(f) does not cover the initial diagnosis or misdiagnosis of abuse contravenes the plain language of the statute and reads into it something that is not readily found on its face. Clearly, an initial diagnosis is covered by the statute as "any activity" related to the making or investigation of a report. K.S.A. 2015 Supp. 38-2223(f) does not qualify or limit the grant of immunity to situations in which reports of abuse are substantiated.

Additionally, Parents' interpretation contravenes the legislature's goal of encouraging reports of suspected abuse in order to "provide for the protection of children." K.S.A. 2015 Supp. 38-2201(b)(5) and (7). Allowing a suit in the event that a doctor incorrectly diagnoses abuse would have a chilling effect on reporting—doctors would be hesitant to report suspected abuse, absent absolute certainty that abuse was taking place, for fear of liability. Episodes of suspected abuse would go unreported, and children would remain in potentially dangerous situations subject to additional harm.

7

In sum, we find that K.S.A. 2015 Supp. 38-2223(f) provides immunity to doctors who negligently misdiagnose child abuse.

*Parents did not sufficiently plead facts indicating malice.*

Second, Parents contend that their petition contained sufficient allegations that the doctor acted maliciously when she diagnosed and reported that R.N.C. had been sexually abused to remove Perez-Marques from the protection of K.S.A. 2015 Supp. 38-2223(f). Perez-Marquez contends that the district court was correct to dismiss Parents' suit for failure to state a claim because they failed to plead malice as would have been necessary based on K.S.A. 2015 Supp. 38-2223(f). Parents respond that they allege sufficient facts from which malice can be inferred, which is all that was needed at the initial pleading stage of the litigation.

Parents are correct that Kansas is a state that only requires notice pleading, meaning that plaintiffs need only include in their initial petition a "'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Montoy v. State*, 275 Kan. 145, 148, 62 P.3d 228 (2003); see also K.S.A. 2015 Supp. 60-208(a)(1). The petition is to be liberally construed by the district court which is "required to draw any reasonable inferences from [the facts pled] and determine whether the facts and inferences state a claim . . . on any possible theory the court can divine." *Nungesser*, 283 Kan. at 559. Liberal construction of the pleading is meant to allow "a pleader to shift the theory of his case as the facts develop, as long as he has fairly informed his opponent of the transaction or the aggregate of the operative facts involved in the litigation." *Montoy*, 275 Kan. at 149. Thus, the petition does not "govern the entire course of the case. Rather, the ultimate legal issues and theories on which the case will be decided are reduced to writing . . . [after] the close of discovery" when the parties have had an opportunity to fully develop their cases. *Nungesser*, 283 Kan. at 559.

8

But here, the one exception to immunity that is clearly found in K.S.A. 2015 Supp. 38-2223(f) is when a report of abuse is made maliciously. Black's Law Dictionary 1100 (10th ed. 2014) has defined malice in part as: "The intent, without justification or excuse, to commit a wrongful act." Our Supreme Court has added that to prove actual malice a plaintiff must show that the defendant acted with "'actual evil-mindedness or specific intent to injure.'" *Turner v. Haliburton Co.*, 240 Kan. 1, 8, 722 P.2d 1106 (1986). Because malice requires a specific state of mind, conduct that is merely negligent or reckless will not be found to be malicious. See *State v. McCown*, 264 Kan. 655, 657, 957 P.2d 401 (1998). Likewise, PIK Civ. 4th 103.05 states that "[m]alice is the intent to do harm without any reasonable justification or excuse."

As it relates to Perez-Marques, the question here is whether Parents allege sufficient facts from which the court could infer that the doctor acted with malice so that the immunity provided by K.S.A. 2015 Supp. 38-2223(f) would not apply to the doctor thereby providing Parents with a viable claim against Perez-Marques. Parents have failed to meet this low, initial bar. Among other things, Parents alleged in their petition that:

- "There was no medical basis for the statements that [R.N.C.] had been sexually abused in any manner."
- "The graphic descriptions of the sexual abuse were . . . without any basis in fact."
- "The parents were told of the allegations in a manner that was not reasonable and caused unnecessary emotional distress and mental anguish."
- "The above contact intentionally . . . inflicted emotional distress on [Parents]."

Although Parents have sufficiently pled that the doctor suspected (or diagnosed) sexual abuse without any reasonable justification or excuse, even accepting these facts as true, there are no facts set forth in the petition from which we can infer that the doctor

9

intended to do harm or acted with "actual evil-mindedness or specific intent to injure." *Turner*, 240 Kan. at 8.

It is easy to imagine how persons in the position of the Parents in this case could perceive even a well-meaning, good-faith report detailing the kind of abuse involved here as outrageous and malicious. And, there is no explanation for why a doctor would fabricate a horrific story about a child, report the story to the police, and share the story with the child's parents all for the purpose of inflicting emotional distress. But the district court cannot infer malice without some allegation of fact to support such a claim. Parents' pleading certainly speaks to the *effect* of doctor's action, but not her intent. For example, Parents allege that the doctor's *contact* with them resulted in the intentional infliction of emotional distress. "To withstand a demurrer, the plaintiff must allege the ultimate facts constituting actual malice." *Stice v. Beacon Newspaper Corporation*, 185 Kan. 61, 67, 340 P.2d 396 (1959).

> "Notice pleading did not do away with the traditional causes of action or the need to at least present the bare bones of the cause of action in the petition in a concise and understandable manner. The claim is to be provided by the petitioner and not by the supposition of the court." *McCormick v. Board of Shawnee County Comm'rs*, 272 Kan. 627, Syl. ¶ 11, 35 P.3d 815 (2001).

In order to overcome Perez-Marques' immunity from suit under K.S.A. 2015 Supp. 38-2223(f) and maintain a cause of action, Parents must sufficiently allege that the doctor acted with actual malice—a specific intent to injure. There are no facts alleged that would elevate the doctor's conduct here beyond mere negligence or recklessness. Furthermore, neither the word malice nor any of its synonyms appear anywhere in the petition. See *Kennedy v. Mid-Continent Telecasting, Inc.*, 193 Kan. 544, 552, 394 P.2d 400 (1964) (mere use of word *maliciously* may not be sufficient, but as long as the allegations charge an express and willful intent to injure, the pleading will be sufficient).

10

Accordingly, we find that the district court did not err in dismissing Parents' claim on the basis that it was not legally cognizable.

Affirmed.